OPINION
{¶ 1} Defendant-appellant, Donald M. Latessa, appeals his judgment of conviction and sentence, following jury trial, on one count of Assault in violation of R.C. 2903.13(B), with a Peace Officer Enhancement, a felony of the fourth degree. For the reasons that follow, we affirm the judgment of the lower court.
 {¶ 2} On August 16, 2005, Officer Christian Lawrence of the Mentor Police Department was on routine patrol. At approximately 3:00 a.m., Lawrence observed a *Page 2 
vehicle, driven by Latessa, fail to signal while making a right hand turn from Hopkins Road onto Perkins Road.
 {¶ 3} While Officer Lawrence followed, he entered the license plate information from Latessa's vehicle into the computer in his police cruiser, checking the license number against the records database maintained by the Ohio Bureau of Motor Vehicles (BMV). The BMV records revealed a possible arrest warrant for the vehicle owner based upon a judgment for an unpaid headlight violation from the Willoughby Municipal Court.
 {¶ 4} Upon learning this information, Officer Lawrence briefly activated his lights and sirens to effectuate a stop. Lawrence testified that he did not run his lights and sirens continuously, since he was in a residential area. In the meantime, Latessa made a turn from Perkins onto Low Ridge Lane, with Officer Lawrence following, and pulled into the driveway of his home, located at 7762 Low Ridge Lane.
 {¶ 5} In the driveway, Latessa exited his vehicle and took a few steps toward Officer Lawrence's cruiser. Lawrence exited his vehicle, and engaged Latessa in a short conversation. Lawrence confirmed Latessa's identity, and they discussed the matter of the outstanding warrant. Lawrence then told Latessa that he would have to detain him for a few minutes while he checked further on the warrant information, and that he would have to submit to a pat-down search for weapons prior to being placed in his cruiser.
 {¶ 6} There is a disagreement between Latessa and Lawrence as to what happened next. Latessa submitted to the pat-down search. Officer Lawrence stated that the search took place without incident. However, Officer Lawrence testified that *Page 3 
when he went to open the door to place Latessa into his cruiser, Latessa punched him in the face and began to run away.
 {¶ 7} Latessa, on the other hand, claimed that Lawrence grabbed his genitals during the pat-down search. After objecting to this, Latessa stated that Lawrence purposely grabbed his genitals a second time. Latessa claims that, after the second time he was groped, he told Lawrence that he was going to call the station and make a report, and began to walk briskly toward his house.
 {¶ 8} Officer Lawrence radioed for backup and pursued Latessa toward the house, after which a fight broke out between the two men in the driveway. Officer Lawrence testified that he produced his flashlight from his belt in an attempt to subdue Latessa.
 {¶ 9} Officer Ryan Heramb was first on the scene. Heramb observed the two men struggling in the driveway between two vehicles. Heramb exited his vehicle to assist Officer Lawrence. Approaching Latessa from his blind side, Heramb effectuated a football-type tackle, after which Latessa, Lawrence and Heramb fell on the driveway, with Latessa falling on top of Officer Heramb. Heramb testified that Latessa fell onto his arm, breaking it.
 {¶ 10} Joan Latessa, appellant's wife, was awakened by her son, Nick, who had observed the struggle between his father and the two officers out in the driveway. Mrs. Latessa testified that she observed both officers beating on her husband and ran out into the driveway to try to stop the fight. Mrs. Latessa's intervention allowed her husband to free himself, at which time he ran for a wooded area on his property with the officers in pursuit. *Page 4 
 {¶ 11} Latessa was located by Officers Lawrence and Heramb in a briar patch on the property. Officer Joseph Primiano arrived on the scene and observed the other officers attempting to coax Latessa out of the briar patch. In an effort to get Latessa to come out, the officers eventually used pepper spray. Officer Primiano testified that he saw Latessa coming "out of the woods" toward the other officers and that it was apparent to him that Latessa was not complying with Lawrence and Heramb's commands to get on the ground. Primiano then attempted to tackle Lawrence in an effort to subdue him. Primiano testified that Latessa scratched him and punched him before the three officers were able to subdue him and place him under arrest.
 {¶ 12} On September 27, 2005, Latessa was charged, by way of indictment, with two counts of Assault, in violation of R.C. 2903.13(A), and two counts of Assault, in violation of R.C. 2903.13(B), each with "peace officer" specifications, pursuant to R.C. 2903.13(C)(3) and (4). Latessa pled not guilty to all charges.[1]
 {¶ 13} The matter proceeded to jury trial on February 27, 2006. On March 1, 2006, the jury returned its verdict. The jury was deadlocked on Count One, regarding Officer Lawrence. The jury found Latessa not guilty on Count Two, regarding Officer Primiano. The jury found Latessa guilty on Count Three, the reckless Assault charge pursuant to R.C. 2903.13(B), regarding Officer Heramb. The trial court declared a mistrial as to Count One and reset trial on that charge.[2] *Page 5 
 {¶ 14} On May 2, 2006, Latessa appeared for his sentencing hearing. The trial court sentenced him to eighteen months in the Lorain Correctional Institution, with credit for sixty-seven days for time served for his conviction on Count Three.
 {¶ 15} Latessa timely appealed, assigning the following as error:
 {¶ 16} "[1.] The trial court erred when it entered a verdict without sufficient evidence to sustain each and every element of the conviction.
 {¶ 17} "[2.] The trial court erred when it entered a verdict that was inconsistent with the manifest weight of the evidence.
 {¶ 18} "[3.] The trial court erred and severely prejudiced appellant at trial, violating his due process rights, when it denied his proposed jury instructions.
 {¶ 19} "[4.] The trial court erred when it sentenced appellant inconsistent with the sentencing factors mandated by the Ohio Revised Code Chapter 2929."
 {¶ 20} In his first assignment of error, Latessa argues that his conviction for reckless Assault was not supported by sufficient evidence.
 {¶ 21} Under the Ohio Rules of Criminal Procedure, a defendant may move the trial court for a judgment of acquittal "if the evidence is insufficient to sustain a conviction." Crim.R. 29(A). "[Sufficiency of the evidence * * * challenges whether the state has presented evidence for each element of the charged offense. The test for sufficiency of evidence is whether, after viewing the probative evidence and the inferences drawn from it, in a light most favorable to the prosecution, any rational trier of fact could find all elements of the charged offense proven beyond a reasonable doubt." State v. Barno, 11th Dist. No. 2000-P-0100, 2001-Ohio-4319, 2001 Ohio App. LEXIS 4280, at *16, citing State v. Jones, 91 Ohio St.3d 335, 345, 2001-Ohio-57. *Page 6 
 {¶ 22} Whether sufficient evidence has been presented is a question of law, thus, an appellate court is not permitted to weigh the evidence when making this inquiry. State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at *13 (citations omitted). A reviewing court will not reverse a judgment based upon the sufficiency of evidence "where there is substantial evidence upon which the [trier of fact] could reasonably conclude that all of the elements of an offense have been proven beyond a reasonable doubt." Id. citingState v. Eley (1978), 56 Ohio St.2d 169, at syllabus. Thus, an appellate court will examine the evidence and determine whether that evidence,"if believed, would convince the average mind of a defendant's guilt beyond a reasonable doubt." State v. Norwood, 11th Dist. No. 2005-L-047,2006-Ohio-3415, at ¶ 15, citing State v. Jenks (1991),61 Ohio St.3d 259, 273 (emphasis added).
 {¶ 23} Latesssa argues that there was insufficient evidence by which a jury could convict him for reckless Assault, since Officer Heramb's injuries were caused by his own negligent actions, i.e., his tackling of Latessa on the concrete. We disagree.
 {¶ 24} The relevant portion of the Assault statute provides that "[n]o person shall recklessly cause serious physical harm to another." R.C.2903.13(B).
 {¶ 25} It is well-settled that "[t]he duties of a police officer are the upholding of the law, to see that the laws are obeyed; to prevent and punish infraction of the criminal laws of the state and city; and to patrol his beat for these purposes." Cincinnati v. Butterfield (1921),14 Ohio App. 395, 396. In upholding the law, an officer is privileged to use an "objectively reasonable" amount of force to effectuate the arrest of a suspect. Graham v. Connor (1989), 490 U.S. 386, 397. Furthermore, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced *Page 7 
to make split-second judgments — in circumstances that are tense, uncertain and rapidly evolving — about the amount of force that is necessary in a particular situation." Id. at 396-397.
 {¶ 26} Testimony from Officer Heramb revealed that he was one of several officers responding to a call for backup from Officer Lawrence indicating that Latessa was fighting with him and resisting arrest. Upon arriving at the Latessa residence, Heramb observed Latessa and Officer Lawrence engaged in a struggle. Latessa testified that he observed Latessa attempting to strike Officer Lawrence with closed-fist punches. In return, Officer Lawrence was attempting to strike Latessa in the legs, and to push him away. In response to what appeared to be Latessa's attempt to assault Officer Lawrence, Officer Heramb approached from Latessa's left side and attempted to tackle Latessa to the ground, which caused both men, as well as Officer Lawrence, to fall on the ground. Officer Heramb fell on the concrete driveway first, with Latessa falling on top of his right arm, at which time Officer Heramb felt a pain in his right arm that traveled up to his shoulder. Officer Heramb testified that after being taken down, Latessa got up off the ground and began swinging his arms and elbows at the two officers. Officer Heramb again attempted to restrain Latessa. Both men fell to the ground with Latessa falling on Heramb's right arm a second time, which caused a much sharper pain.
 {¶ 27} As the recklessness requirement clearly indicates, all that is needed to impose criminal liability is a perverse disregard of "a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C). Based upon the testimony of Officers Lawrence and Heramb, Latessa, was perversely *Page 8 
disregarding the risk that his conduct was likely to cause an injury to an officer arriving on the scene to assist in arresting and/or detaining him.
 {¶ 28} Furthermore, we conclude that the element of serious physical harm was also supported by sufficient evidence. "Serious physical harm includes physical harm which causes a temporary, substantial impairment." State v. Pasqualucci, 9th Dist. No. 21905, 2004-Ohio-4876, at ¶ 5, citing R.C. 2901.01(A)(5)(c). It also includes "[a]ny physical harm that involves acute pain of such duration as to result in substantial suffering." R.C. 2901.01(A)(5)(e).
 {¶ 29} Testimony and medical records admitted into evidence revealed that Officer Heramb had suffered a broken ulna, which resulted in him having to wear various casts and braces on his right arm for a period of twelve weeks and missing ten weeks of work.
 {¶ 30} On the basis of the foregoing, we conclude that there was substantial evidence upon which a reasonable jury could find all elements of reckless Assault proven beyond a reasonable doubt.
 {¶ 31} Latessa's first assignment of error is without merit.
 {¶ 32} Latessa next argues that his conviction for reckless Assault was against the manifest weight of the evidence, since the defense witnesses' accounts of events are in conflict with those of the prosecution's witnesses. Again, we disagree.
 {¶ 33} Manifest weight of the evidence raises a factual issue and involves "the inclination of the greater amount of credible evidence."State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52 (emphasis sic) (citation omitted). Although the weight to be given to the evidence and the credibility of the witnesses is primarily for the trier of *Page 9 
fact to determine, State v. Thomas (1982), 70 Ohio St.2d 79, at syllabus, when reviewing a manifest weight challenge, the appellate court sits as the "thirteenth juror." Thompkins, 78 Ohio St.3d at 387
(citation omitted). As such, the reviewing court must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed * * *." Id., quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 34} The reviewing court may exercise its discretionary power to reverse a judgment as being against the manifest weight of the evidence only in "those extraordinary cases where, on the evidence and theories presented, and taken in a light most favorable to the prosecution,no reasonable [trier of fact] could have found the defendant guilty."State v. Bradford (Nov. 7, 1988), 5th Dist. No. CA-7522, 1988 Ohio App. LEXIS 4576, at *4, citing Martin, 20 Ohio App.3d at 175 (emphasis added).
 {¶ 35} Based upon the aforementioned testimony and evidence, we cannot say that the jury's conclusion was unreasonable, despite the fact that defense witnesses' accounts of events differed from those of the prosecution's witnesses.
 {¶ 36} It is well-settled that when assessing the credibility of witnesses, "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." State v. Awan (1986), 22 Ohio St.3d 120, 123. "Indeed, the factfinder is free to believe all, part, or none of the testimony of each witness appearing before it." Warren v. Simpson (Mar. 17, 2000), 11th Dist. No. 98-T-0183, 2000 Ohio App. LEXIS *Page 10 
1073, at *8. If the evidence is susceptible to more than one interpretation, a reviewing court must interpret it in a manner consistent with the verdict. Id.
 {¶ 37} Latessa's second assignment of error is without merit.
 {¶ 38} In his third assignment of error, Latessa argues that the trial court committed prejudicial error by refusing to give the jury an instruction on the lesser-included offense of disorderly conduct. Latessa concedes that an instruction as to minor misdemeanor assault was not appropriate, but rather argues that the trial court erred in not offering an instruction on "fourth degree misdemeanor" disorderly conduct. We disagree.
 {¶ 39} In reviewing a trial court's jury instructions, the appellate court "reviews whether the trial court's refusal to give a requested jury instruction constitutes an abuse of discretion." State v.Yontz (1999), 135 Ohio App.3d 530, 537, citing State v. Wolons (1989),44 Ohio St.3d 64, 68. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219 (citation omitted).
 {¶ 40} "The test to be applied when determining if a charge or instructions should be given on a lesser included offense is whether the jury could find against the state on an element of the crime charged, yet find for the state on the remaining elements which would be sufficient to sustain a conviction on a lesser included offense. If the jury can reasonably find that the state failed to prove one element of the charged offense beyond a reasonable doubt but that the other elements of the offense were proven beyond a reasonable doubt, thus sustaining a conviction on a lesser included offense, a charge *Page 11 
on the lesser included offense is required. However, `if the jury could not reasonably find against the state on an element of the crime, then a charge on a lesser-included offense is not only not required but is also improper.'" State v. Houseman (1990), 70 Ohio App.3d 499, 506, quotingState v. Kilby (1977), 50 Ohio St.2d 21, 24-25.
 {¶ 41} An offense may be considered a lesser included offense of another if: (1) the offense carries a lesser penalty than the other; (2) the greater offense cannot ever be committed without the lesser offense also being committed; and (3) some element of the greater offense is not required to prove the commission of the lesser offense. State v.Deem (1988), 40 Ohio St.3d 205, paragraph three of the syllabus;State v. Hill (June 15, 2001), 11th Dist. No. 2000-L-021, 2001 Ohio App. LEXIS 2718, at *6 (citation omitted).
 {¶ 42} "It is not significant that the common elements of these two offenses [are] not stated in identical language in the statutes, [if the] common elements are implicit in the conduct that constitutes the offenses." State v. Roberts (1982), 7 Ohio App.3d 253, 255. "The second prong of the Deem test requires us to examine the offenses asstatutorily defined and not with reference to specific factual scenarios." State v. Barnes, 94 Ohio St.3d 21, 26, 2002-Ohio-68
(citation omitted).
 {¶ 43} The relevant portion of the assault statute provides as follows: "No person shall recklessly cause serious physical harm to another." R.C. 2903.13(B). Assault, where the victim involved is a "peace officer" engaged in the performance of his official duties, is a felony of the fourth degree. 2903.13(C)(3).
 {¶ 44} By contrast, the Disorderly Conduct statute provides that "[n]o person shall recklessly cause inconvenience, annoyance, or alarm to another by * * * [e]ngaging in *Page 12 
fighting, in threatening harm to persons or property, or in violent or turbulent behavior." R.C. 2917.11(A)(1). Disorderly conduct is a minor misdemeanor, unless "[t]he offender persists in disorderly conduct after reasonable warning or request to desist," in which case it is a misdemeanor of the fourth degree. See R.C. 2917.11(E)(2) and R.C.2917.11(E)(3)(a).
 {¶ 45} "A review of case law reveals a split of authority on the issue of whether disorderly conduct is a lesser included offense of assault."Yontz, 135 Ohio App.3d 530, 538-539.
 {¶ 46} Some appellate courts have held that minor misdemeanor disorderly conduct is a lesser included offense of assault. See Id.;State v. Burgess (1992), 79 Ohio App. 3d 584; State v. Reynolds (1985),25 OhioApp.3d 59; Roberts, 7 Ohio App.3d 253. Other districts have held that minor misdemeanor disorderly conduct is not a lesser included offense of assault. See State v. Neal (Sept, 1, 1998), 10th Dist. No. 97APA12-1676, 1998 Ohio App. LEXIS 4149; Uhrichsville v. Conrad, 5th Dist. No. 2005 AP 06 0042, 2006-Ohio-1293.
 {¶ 47} The Ohio Supreme Court appears to have recently settled the issue in favor of those districts which have held that minor misdemeanor disorderly conduct is, indeed, a lesser included offense of assault. InShaker Heights v. Mosely, 113 Ohio St.3d 329, 2007-Ohio-2072, the Court held that minor misdemeanor disorderly conduct is a lesser-included offense of domestic violence. Id. at syllabus. This court reached a similar conclusion in State v. Amos (Jan. 15, 1988), 11th Dist. No. 12-088, 1988 Ohio App. LEXIS 78, when we adopted the reasoning ofReynolds to conclude that disorderly conduct as a minor misdemeanor was a lesser included offense of domestic violence. *Page 13 
Id. at *8. In so doing, we noted that "the language in the statute pertaining to assault is identical to that of domestic violence except for the fact that domestic violence deals specifically with a family or household member." Id. at *7-*8 (emphasis added).
 {¶ 48} This court, in State v. Kutnar (Sept. 30, 1999), 11th Dist. No. 98-L-117, 1999 Ohio App. LEXIS 4652, clarified its holding inAmos to distinguish disorderly conduct as a fourth degree misdemeanor from domestic violence. In Kutnar, we held that "[disorderly conduct as a fourth degree misdemeanor requires proof of an additionalelement, to wit: the offender persists after reasonable warning or request to desist * * *. This element is not required to prove a charge of domestic violence. Consequently, the greater offense of domestic violence can be committed without simultaneously committing disorderly conduct as a fourth degree misdemeanor, thereby precluding the possibility that the latter is a lesser included offense of the former." Id. at *17 (emphasis added) (citations omitted); accordBurgess, 79 Ohio App.3d at 587 (fourth degree misdemeanor disorderly conduct is not a lesser included offense of domestic violence);Reynolds, 25 Ohio App.3d at 60 (fourth degree misdemeanor disorderly conduct is not a lesser included offense of assault since "an act of assault can be committed without also committing the elevated version of disorderly conduct").
 {¶ 49} Latessa concedes that he would not be entitled to an instruction for minor misdemeanor disorderly conduct because he did not desist after a reasonable warning from the police. Since, we have also determined that Latessa was not entitled to a jury instruction on fourth degree misdemeanor disorderly conduct as a matter of law, the trial court did not abuse its discretion by declining to give a jury instruction on disorderly conduct as a lesser included offense. *Page 14 
 {¶ 50} Latessa further argues that the trial court committed reversible error by denying his request for a jury instruction on self-defense. We disagree.
 {¶ 51} The affirmative defense of self-defense is "justification for admitted conduct." State v. Martin (1986), 21 Ohio St.3d 91, 94, (citation omitted). As such, "[s]elf-defense represents more than a `denial or contradiction of evidence which the prosecution has offered as proof of an essential element of the crime * * * [r]ather, * * * this defense admits the facts claimed * * * and then relies on independent facts or circumstances which the defendant claims exempt him from liability.'" Id., quoting State v. Poole (1973), 33 Ohio St.2d 18, 19. "Thus, a self-defense instruction would be appropriate under circumstances where a defendant does not dispute the offense but claims the use of force was justified." Neal, 1998 Ohio App. LEXIS 4149, at *13 (emphasis added).
 {¶ 52} In the case sub judice, appellant's entire defense was predicated upon Latessa's denial of using force to resist. Under these circumstances, a self-defense instruction was not warranted, and the trial court did not abuse its discretion by denying his request.
 {¶ 53} Latessa's third assignment of error is without merit.
 {¶ 54} In his fourth assignment of error, Latessa argues that his sentence was "inconsistent and disproportionate with sentences imposed upon similar defendants in Ohio trial courts." We disagree.
 {¶ 55} The overriding purposes of felony sentencing in Ohio "are to protect the public from future crime by the offender * * * and to punish the offender." R.C. 2929.11(A). In addition to being consistent with other sentences imposed for similar *Page 15 
crimes, a felony sentence must be "reasonably calculated" to achieve the overriding purposes of felony sentencing and be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim." R.C. 2929.11(B).
 {¶ 56} The statutory range of prison terms for felonies of the fourth degree is six to eighteen months. R.C. 2929.14(A)(4). As a general rule, sentences that fall within the statutory range do not violate the constitutional provision regarding excessive punishments. State v.Gladding (1990), 66 Ohio App.3d 502, 513, citing McDougle v.Maxwell (1964), 1 Ohio St.2d 68, 69.
 {¶ 57} "[I]t is not the trial court's responsibility to research prior sentences from undefined, and largely unavailable, databases before reaching its sentencing decision." State v. Quine, 9th Dist. No. 20968, 2002-Ohio-6987, at ¶ 12. Thus, the only way for Appellant to demonstrate that his sentence was "`inconsistent' * * * is if he establishes that the trial court failed to * * * consider the * * * guidelines contained in [Ohio's sentencing statutes]." Id. at ¶ 13.
 {¶ 58} This court has stated that, although "a trial court is required to engage in the analysis set forth by R.C. 2929.11(B) to ensure the consistency of sentences," a court is not required "to make specific findings on the record" in this regard. State v. Newman, 11th Dist. No. 2002-A-0007, 2003-Ohio-2916, at ¶ 10. Moreover, a trial court possesses "broad discretion to determine the most effective way to comply with the purposes and principles of sentencing within the statutory guidelines."State v. Smith (Jun. 11, 1999), 11th Dist. No. 98-P-0018, 1999 Ohio App. LEXIS 2632, at *8.
 {¶ 59} Our review of the sentencing transcript indicates that the trial court considered the relevant sentencing guidelines prior to imposing Latessa's sentence of *Page 16 
eighteen months. Since his sentence falls within the statutory range, we cannot conclude the trial court abused its discretion by imposing a sentence inconsistent with similarly situated offenders.
 {¶ 60} Latessa's fourth assignment of error is without merit.
 {¶ 61} For the foregoing reasons, we affirm the judgment of the Lake County Court of Common Pleas.
MARY JANE TRAPP, J., concurs,
WILLIAM M. O'NEILL, J., dissents with a Dissenting Opinion.
[1] Prior to trial, the State moved to enter a nolle prosequi dismissing one of the two assault charges as related to Officer Primiano, leaving two counts of Assault, as against Officers Primiano and Lawrence, in violation of R.C. 2903.13, and one count of reckless Assault, in violation of R.C. 2903.13(B) as against Officer Heramb.
[2] On April 10, 2006, rather than electing to retry Latessa on Count One, the state moved to enter a nolle prosequi on that charge, which was subsequently granted by the trial court.