OPINION
{¶ 1} Appellant, Frederick L. Golding, Jr., appeals from the March 17, 2008 judgment entry of the Lake County Court of Common Pleas, in which he was sentenced for domestic violence.
 {¶ 2} On September 13, 2007, appellant was indicted by the Lake County Grand Jury on one count of domestic violence, a felony of the fourth degree, in violation *Page 2 
of R.C. 2919.25(A). On September 28, 2007, appellant filed a waiver of his right to be present at the arraignment and the trial court entered a not guilty plea on his behalf.
 {¶ 3} A jury trial commenced on February 11, 2008.[1]
 {¶ 4} At the trial, it was revealed that on May 30, 2007, at approximately 3:30 p.m., Toni D. Golding ("Toni") picked up appellant, her ex-husband, from work. Toni and appellant went to a bar where each consumed a few drinks. They later left the bar and went to Toni's apartment in Wickliffe, Lake County, Ohio, where appellant planned to spend the night.
 {¶ 5} Toni testified for appellee, the state of Ohio, that on the way to her apartment, she noticed appellant's demeanor started to change as he became angry with her. She indicated that appellant asked her to get some marijuana. Toni complied by arranging for someone to meet them at her apartment. The male supplier arrived and the three smoked marijuana together. Appellant also continued to drink more beer. Because appellant's behavior was getting worse, Toni asked her neighbor, Cassie Thomas Harrold ("Cassie"), to come to her apartment to help her stay safe from appellant.
 {¶ 6} Cassie testified for the state that she could tell that Toni was upset. Shortly after walking down to Toni's apartment, Cassie saw the male visitor and decided to return to her own apartment with her young daughter. She indicated that she saw appellant come out of Toni's apartment and heard him tell Toni that he had knocked *Page 3 
over one of her plants, which she had received at her deceased daughter's funeral. Cassie also testified that later than evening, she saw Toni pounding on her own apartment door.
 {¶ 7} According to Toni, after Cassie and the male visitor left, appellant's demeanor got even worse. He began to yell and call her names. Toni stated that appellant threw beer bottles and cigarettes all over her apartment as well as urinated on her bed. Toni testified that appellant became physically aggressive and punched her in the left eye with a closed fist. She indicated that she fell to the ground and appellant continued to grab at her arms and kick her in the leg. Toni stayed on the ground and did not fight back. Toni testified that appellant demanded that she take him to Madison, Ohio, where he was living at the time. Toni complied. After dropping appellant off, Toni returned to her apartment, still in shock.
 {¶ 8} The following morning, Toni decided to attend a class she was taking at Lakeland Community College. Before leaving for school, she went to Cassie's apartment. According to Cassie, she immediately noticed that Toni had a very swollen black left eye, which she did not see the night before.
 {¶ 9} At school, Toni confided in her professor, Dr. Veeneenea Erika Smith ("Dr. Smith"). Dr. Smith testified for the state that when Toni pulled her hair back from her face, she saw that Toni's eye was swollen and that she had applied make-up to cover up the blackness. Dr. Smith encouraged her to seek help from the counseling department on campus as well as to speak with the police.
 {¶ 10} The next morning, June 1, 2007, Toni went to the Wickliffe Police Department ("WPD") and filed a report with respect to the physical altercation that *Page 4 
transpired with appellant on May 30, 2007. Officer Charles Blanton ("Officer Blanton"), with the WPD, testified for the state that he met with Toni and that she appeared anxious. Officer Blanton noticed that Toni's left eye was puffy. After Toni removed her make-up, Officer Blanton was able to more clearly see the swelling and bruising on her left eye. Toni also showed Officer Blanton other injuries she sustained, including a cut on her nose as well as bruising on her arms, knees, and legs. Officer Blanton indicated that based on his training, the color/stage of Toni's bruises was consistent with the time of the reporting of the incident and her indication of what had transpired between the two.
 {¶ 11} According to Officer Blanton, Toni informed him that appellant called her the previous day to arrange a meeting to give her money that he owed her. During their conversation, Toni indicated that she was planning on going to appellant's work later that afternoon. Officer Blanton advised Toni to postpone the meeting. However, Toni went to appellant's place of employment around 3:30 p.m. They arranged to meet in the parking lot. Appellant approached the driver's side of Toni's vehicle and gave her the money.
 {¶ 12} On June 4, 2007, appellant was arrested on the charge of domestic violence. He was transported to the WPD where, upon being read and subsequently waiving his Miranda rights, he spoke with Officer Daniel Moreland ("Officer Moreland"). Officer Moreland testified for the state that appellant admitted that he was with Toni on May 30, 2007, but denied that any sort of argument or disturbance occurred between them. *Page 5 
 {¶ 13} Two witnesses testified on appellant's behalf. Karen Mackey, appellant's ex-girlfriend and co-worker, indicated that she did not notice any scratches or marks on his hands or arms. Edna Golding, appellant's mother, testified that she saw him after the incident and stated that he appeared calm, did not have any blood on his clothes, and no marks, scrapes, or bruises on his hands.
 {¶ 14} On February 13, 2008, following the trial, the jury returned a guilty verdict. The trial court deferred sentencing until a later date and referred the matter to the Adult Probation Department for a presentence investigation and report, a victim impact statement, a drug and alcohol evaluation, and a psychological evaluation.
 {¶ 15} On February 25, 2008, appellant filed a motion for new trial pursuant to Crim. R. 33, and a motion for acquittal pursuant to Crim. R. 29(C). On March 6, 2008 the state filed a response to appellant's motion for acquittal. The state filed a brief in opposition to appellant's motion for new trial on March 12, 2008. On March 14, 2008, the trial court denied appellant's motions.
 {¶ 16} Pursuant to its March 17, 2008 judgment entry, the trial court sentenced appellant to eighteen months in prison, with thirty-one days of credit for time already served. It is from that judgment that appellant filed a timely notice of appeal and asserts the following three assignments of error for our review:
 {¶ 17} "[1.] The trial court erred to the prejudice of [appellant] when it permitted lay opinion and/or alleged `expert' testimony in violation of [appellant's] state and federal constitutional rights to due process and fair trial.
 {¶ 18} "[2.] The trial court committed reviersible (sic) error when it refused to submit [appellant's] proposed jury instruction in violation of [appellant's] rights to due *Page 6 
process and fair trial as guaranteed by the Fifth andFourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution.
 {¶ 19} "[3.] The trial court erred to the prejudice of [appellant] when it returned a verdict of guilty against the manifest weight of the evidence."
 {¶ 20} In his first assignment of error, appellant argues that the trial court erred by permitting lay opinion and/or alleged "expert" testimony in violation of his state and federal constitutional rights to due process and fair trial. Appellant stresses that the trial court erred by allowing Officer Moreland to testify regarding the behavior of domestic violence victims.
 {¶ 21} The trial court has broad discretion in the admission and exclusion of evidence. State v. Hymore (1967), 9 Ohio St.2d 122, 128. An appellate court shall not disturb evidentiary rulings absent an abuse of discretion. Id. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams (1980),62 Ohio St.2d 151, 157. The term is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record. See, e.g., State v. Ferranto (1925), 112 Ohio St. 667, 676-678.
 {¶ 22} Evid. R. 701 provides: "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."
 {¶ 23} Evid. R. 702 states: *Page 7 
 {¶ 24} "A witness may testify as an expert if all of the following apply:
 {¶ 25} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 {¶ 26} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 {¶ 27} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:
 {¶ 28} "(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
 {¶ 29} "(2) The design of the procedure, test, or experiment reliably implements the theory;
 {¶ 30} "(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result."
 {¶ 31} In the case at bar, a review of the record establishes that Officer Moreland's in-court testimony was based on his personal experience and professional background. He testified in general terms, explaining that the characteristics and behaviors of domestic violence victims as well as the aggressors vary from case to case. Officer Moreland never gave an opinion as to Toni's truthfulness or that he believed her testimony. He also never gave a conclusion as to the present case based on his experience. We disagree with appellant that Officer Moreland's testimony *Page 8 
bolstered Toni's credibility or veracity. Much of the in-court testimony upon which appellant takes issue was elicited to prepare the jury as well as lay a proper foundation for the admission of appellant's booking video, in which Officer Moreland interviewed appellant. Officer Moreland's testimony falls squarely within the parameters of Evid. R. 701.
 {¶ 32} In addition, Officer Moreland's testimony can be viewed as expert in nature under Evid. R. 702(B) due to the fact that he possesses a "specialized knowledge" of domestic violence cases. See State v.Hale, 119 Ohio St.3d 118, 2008-Ohio-3426, at ¶ 54; and State v.Solether, 6th Dist. No. WD-07-053, 2008-Ohio-4738, at ¶ 65-69. Officer Moreland's fifteen year career in law enforcement and investigation of hundreds of domestic violence cases renders his testimony admissible under Evid. R. 702(B).
 {¶ 33} Even assuming arguendo that the trial court should not have allowed portions of Officer Moreland's testimony to be admitted, any "error" was harmless. "* * * [A]s the Ohio Supreme Court has noted, the admission of improper evidence is harmless if the remaining evidence provides overwhelming proof of the defendant's guilt." State v.Cochran, 11th Dist. No. 2006-G-2697, 2007-Ohio-345, at ¶ 16, citingState v. Sage (1987), 31 Ohio St.3d 173, 181. In this case, the remaining evidence is sufficient to "overwhelm" any error in admitting Officer Moreland's testimony.
 {¶ 34} Appellant's first assignment of error is without merit.
 {¶ 35} In his second assignment of error, appellant alleges that the trial court erred by refusing to submit his proposed jury instruction for the lesser included offense of disorderly conduct in violation of his rights to due process and fair trial as guaranteed *Page 9 
by the Fifth and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution.
 {¶ 36} This court stated in State v. Latessa, 11th Dist. No. 2006-L-108, 2007-Ohio-3373, at ¶ 39-42:
 {¶ 37} "In reviewing a trial court's jury instructions, the appellate court `reviews whether the trial court's refusal to give a requested jury instruction constitutes an abuse of discretion.' State v.Yontz (1999), 135 Ohio App.3d 530, 537, * * * citing State v. Wolons
(1989), 44 Ohio St.3d 64, 68 * * *. * * *
 {¶ 38} "The test to be applied when determining if a charge or instructions should be given on a lesser included offense is whether the jury could find against the state on an element of the crime charged, yet find for the state on the remaining elements which would be sufficient to sustain a conviction on a lesser included offense. If the jury can reasonably find that the state failed to prove one element of the charged offense beyond a reasonable doubt but that the other elements of the offense were proven beyond a reasonable doubt, thus sustaining a conviction on a lesser included offense, a charge on the lesser included offense is required. However, "if the jury could not reasonably find against the state on an element of the crime, then a charge on a lesser-included offense is not only not required but is also improper."' State v. Houseman (1990), 70 Ohio App.3d 499, 506, * * *, quoting State v. Kilby (1977), 50 Ohio St.2d 21, 24-25, * * *.
 {¶ 39} "An offense may be considered a lesser included offense of another if: (1) the offense carries a lesser penalty than the other; (2) the greater offense cannot ever be committed without the lesser offense also being committed; and (3) some element of *Page 10 
the greater offense is not required to prove the commission of the lesser offense. State v. Deem (1988), 40 Ohio St.3d 205, * * *, paragraph three of the syllabus; State v. Hill (June 15, 2001), 11th Dist. No. 2000-L-021, 2001 Ohio App. LEXIS 2718, at 6 (citation omitted).
 {¶ 40} "`It is not significant that the common elements of these two offenses (are) not stated in identical language in the statutes, (if the) common elements are implicit in the conduct that constitutes the offenses.' State v. Roberts (1982), 7 Ohio App.3d 253, 255, * * *. The second prong of the Deem test requires us to examine the offenses asstatutorily defined and not with reference to specific factual scenarios.' State v. Barnes, 94 Ohio St.3d 21, 26, 2002-Ohio-68, * * * (citation omitted)." (Parallel citations omitted.)
 {¶ 41} Minor misdemeanor disorderly conduct under R.C. 2917.11(A)(1) is a lesser included offense of domestic violence under R.C. 2919.25(A). See State v. Kutnar (Sept. 30, 1999), 11th Dist. No. 98-L-117, 1999 Ohio App. LEXIS 4652, at 17. Thus, "the relevant inquiry becomes whether the evidence warranted a jury instruction on the lesser offense." Id. at 18.
 {¶ 42} In the case sub judice, appellant was charged with one count of domestic violence under R.C. 2919.25(A), which provides: "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member."
 {¶ 43} By contrast, minor misdemeanor disorderly conduct under R.C. 2917.11(A)(1) states in part: "[n]o person shall recklessly cause inconvenience, annoyance, or alarm to another by * * * [e]ngaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior [.]"
 {¶ 44} Here, the evidence presented suggests that appellant caused or *Page 11 
attempted to cause physical harm to Toni. Again, according to Toni, appellant became physically aggressive and punched her in the left eye with a closed fist. She indicated that she fell to the ground and appellant continued to grab at her arms and kick her in the leg. Toni stayed on the ground and did not fight back. Cassie testified that on the morning following the incident, she immediately noticed that Toni had a very swollen black left eye, which she did not see the night before. Dr. Smith also indicated that Toni's eye was swollen and that she had applied make-up to cover up the blackness. Officer Blanton testified that he saw swelling and bruising on Toni's left eye as well as a cut on her nose and bruising on her arms, knees, and legs. In addition to the trial testimony, photo exhibits depicted Toni's injuries. All of the foregoing evidence established "physical harm," as defined in R.C. 2901.01(A)(3).
 {¶ 45} It was also uncontroverted that Toni was a "family or household member" as that term is defined by R.C. 2919.25(F). The evidence demonstrated that Toni is the former spouse of appellant. See R.C. 2919.25(F)(1)(a)(i).
 {¶ 46} Finally, the evidence supported a finding that appellant acted knowingly, rather than just recklessly. Appellant had to have known that his conduct would "probably cause a certain result" or would "probably be of a certain nature." See R.C. 2901.22(B) (defining "knowingly" as a culpable state of mind).
 {¶ 47} Given this evidence, the jury could not have reasonably acquitted appellant of domestic violence, while convicting him only of minor misdemeanor disorderly conduct. The trial court did not abuse its discretion by declining to give a jury instruction on minor misdemeanor disorderly conduct as a lesser included offense. See Kutnar, supra, at 21; and Latessa, supra, at 49. *Page 12 
 {¶ 48} Appellant's second assignment of error is without merit.
 {¶ 49} In his third assignment of error, appellant contends that his conviction for domestic violence is against the manifest weight of the evidence.
 {¶ 50} As this court stated in State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at 14-15:
 {¶ 51} "* * * `[M]anifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.
 {¶ 52} "`In determining whether the verdict was against the manifest weight of the evidence, "(* * *) the court reviewing the entire record,weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *)"' (Citations omitted.) * * *" (Emphasis sic.)
 {¶ 53} A judgment of a trial court should be reversed as being against the manifest weight of the evidence "`only in the exceptional case in which the evidence weighs heavily against the conviction.'" State v.Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175.
 {¶ 54} With regard to the manifest weight of the evidence, we note that the jury is in the best position to assess the credibility of witnesses. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 55} Here, the jury chose to believe the state's witnesses. Again, Toni's testimony, when taken in conjunction with the testimony of Cassie, Dr. Smith, and *Page 13 
Officer Blanton, and weighed against appellant's version of the events, provided the greater amount of credible evidence. Toni testified that upon being punched by appellant, she got a paper towel to wipe away the blood from her face. Exhibits at trial revealed cuts on Toni's nose and brow. Again, Cassie and Dr. Smith both saw Toni after the incident on the following day and observed swelling and blackness around her left eye. According to Cassie, she did not see a black eye on Toni the night before. Also, Officer Blanton testified that Toni's eye was bruised. Officer Blanton indicated that based on his training, the color/stage of Toni's bruises was consistent with the time of the reporting of the incident and her indication of what had transpired between the two.
 {¶ 56} Based on the evidence presented, we cannot say that the jury clearly lost its way in finding appellant guilty of the crime charged.
 {¶ 57} Pursuant to Schlee and Thompkins, supra, the jury did not clearly lose its way in convicting appellant of domestic violence.
 {¶ 58} Appellant's third assignment of error is without merit.
 {¶ 59} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Lake County Court of Common Pleas is affirmed. The court finds there were reasonable grounds for this appeal.
DIANE V. GRENDELL, J., CYNTHIA WESTCOTT RICE, J., concur.
[1] Prior to trial, appellant filed a motion in limine to exclude a police officer's lay opinion testimony regarding victims of domestic violence as well as comments made by a police officer on the interrogation videotape regarding the behavior of victims of domestic violence. Appellant also filed proposed jury instructions requesting the trial court to give a lesser-included offense instruction for disorderly conduct. The trial court denied both motions. *Page 1