[Cite as *State v. Vanhorn*, 2017-Ohio-704.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**ASHTABULA COUNTY, OHIO**

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2016-A-0025** |
| MOLLY VANHORN, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2015 CR 00160.

Judgment: Affirmed.

*Nicholas A. Iarocci*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Marrett W. Hanna*, 565 Huntley Drive, Medina, OH 44256 (For Defendant-Appellant).

COLLEEN MARY O'TOOLE, J.

{¶1} Appellant, Molly Vanhorn, appeals from the judgments of the Ashtabula County Court of Common Pleas, finding her guilty of burglary, grand theft, and theft of drugs following a jury trial and sentencing her to 36 months in prison. On appeal, appellant asserts the trial court denied her a meaningful opportunity to present a complete defense. She also asserts the court erred in denying her Crim.R. 29 motion

for judgment of acquittal and maintains that her convictions are against the manifest weight of the evidence. Finding no error, we affirm.

{¶2} On April 9, 2015, appellant was indicted by the Ashtabula County Grand Jury on three counts: count one, burglary, a felony of the second degree, in violation of R.C. 2911.12; count two, grand theft, a felony of the fourth degree, in violation of R.C. 2913.02; and count three, theft of drugs, a felony of the fourth degree, in violation of R.C. 2913.02. Appellant was represented by counsel and pleaded not guilty to all charges at her arraignment.

{¶3} A jury trial commenced on September 14, 2015. Three witnesses testified for appellee, the state of Ohio: Linda Bradley, appellant's step-mother; Larry Vanhorn, appellant's father; and Officer Clay Beck, an officer with the Orwell Police Department.

{¶4} Linda Bradley and her husband, Larry Vanhorn, reside at 569 East Main Street, Orwell, Ashtabula County, Ohio. On November 3, 2014, the couple received an unexpected visit from appellant and her son, Devon Vanhorn. Appellant had not visited Linda and Larry for over a year. Linda and Larry told appellant they were leaving soon to go to Wal-Mart so that Larry could get out of the house for a bit following a neck injury.

{¶5} Appellant asked to use the bathroom. The bathroom faced the back of the house and had a window which was accessible from the deck. About three to five minutes later, appellant exited the bathroom. Appellant then went out to her car to bring in breakfast sandwiches from McDonald's. About five minutes later, Devon came inside through the back door. Appellant and Devon visited Linda and Larry briefly before leaving in a gray/silver Trailblazer. About five minutes later, Linda and Larry left the

2

residence. En route to Wal-Mart, Linda saw appellant and Devon at a nearby Shell gas station. Appellant and Devon waved and Linda waved back. Linda testified that appellant was in the driver's seat and Devon was pumping gas. During Larry's cross-examination, he said he saw Devon at the gas station but did not notice appellant.

{¶6} When the couple returned home, Linda carried in her purchases then went into the bathroom. Linda noticed the radio antenna, which was usually hooked outside of the bathroom window, was now hanging down to the floor. She also noticed that the radio and some books had been moved to the opposite side of the window ledge. Linda asked Larry what he had done in the bathroom. Larry responded he had not been in there. The couple then noticed that the window opened when Linda reached up and pushed on it. Linda testified that Larry is "very anal about the windows being locked" and that they had "all the windows locked up for the winter time." (Transcript p. 101). Larry testified he was "paranoid about keeping that window locked." (Transcript p. 137). Larry stated every time he went to the bathroom he made sure the window was locked because it was very easy to get in and out of.

{¶7} Linda kept money in various purses in her bedroom closet and in her freezer. Linda had close to $5,000 from casino winnings. Linda testified that Devon knew her hiding places because she had given him money in the past. When Linda went to check on her money, she discovered it was all gone. Most of her jewelry was also missing. In addition, prescription pills were also gone. She estimated the total loss at $19,000.

{¶8} Larry called appellant to talk with her about the theft. Larry testified that appellant said Devon was "out of wack" and did not want to talk. (Transcript p. 139).

3

Larry also contacted the police. Officer Beck responded, spoke with Linda and Larry, and took pictures at the residence. After the officer left, Larry called/texted appellant several more times requesting that she return the money and items so they would not have to prosecute her. In order to get appellant to confess, Larry bluffed and told her they had a security camera at the residence. Larry further bluffed and told appellant that she and Devon were observed committing the crimes. The bluff worked to the extent that Devon ended up admitting to going into Linda and Larry's home and taking the money and items at issue. On re-cross examination, Linda was asked by defense counsel if Devon admitted that he went into the home. Linda replied, "Yes he did." (Transcript p. 122). Defense counsel further asked Linda if Devon admitted to taking the stuff. Linda responded, "Yes he did." *Id.*

{¶9} Appellant claimed in a text message to Larry that the bathroom window was already open when she used the facilities and that she was talking to an outdoor cat through the open window. Larry testified his cats are "scaredy" cats and that they were inside the house. (Transcript p. 154). Appellant denied stealing anything. Appellant also claimed she was looking at a car at Reel's used car lot, two doors down from Linda and Larry's, after she and Devon left the gas station.

{¶10} Officer Beck testified he went through the residence with Linda and Larry. The couple told him what was missing. Officer Beck observed footprints in the grass from an adjacent property to the back deck. Based upon his interview with Linda and Larry, the officer determined that appellant and Devon were suspects.

{¶11} Officer Beck viewed the videos from the Shell gas station and from Reel's. (State's Exhibits 16 and 17). Officer Beck testified that the video from Shell confirms

4

that appellant was at the station after she and Devon left Linda and Larry's residence. The Shell video also shows Linda and Larry's vehicle passing the gas station. Officer Beck also testified that the video from Reel's shows Linda and Larry's residence. The Reel's video also shows both vehicles leaving the residence, then minutes later, shows appellant and Devon returning to the area. After viewing both videos, Officer Beck determined that he should speak with appellant and Devon.

{¶12} Appellant and Devon voluntarily came to the station for interviews. Officer Beck said appellant was "very vague. Kind of evasive. Every time we'd ask a question she'd try changing the subject to something else." (Transcript p. 174). Appellant claimed the bathroom window was open. Appellant indicated she and Devon left Linda and Larry's residence, went to the Shell gas station, went to Reel's, then went back to Linda and Larry's to "try to catch them before they left." (Transcript p. 175).

{¶13} At the close of the state's case, defense counsel moved for an acquittal pursuant to Crim.R. 29 which was overruled by the trial court.

{¶14} Appellant was the sole witness to testify for the defense. According to appellant, she was on probation for a drug possession charge. Appellant indicated while she and Devon were visiting Linda and Larry at their home, appellant talked to an outdoor cat through the open bathroom window. Before leaving the bathroom, appellant said she closed the window but did not lock it.

{¶15} Appellant said she and Devon later left the residence and went to the Shell gas station. She stated that Devon had to use the bathroom so they headed back to Linda and Larry's house. Devon apparently had a problem using public restrooms. Appellant said she went to Reel's to look for a used car and told Devon to "go ahead

5

and go do your business." (Transcript p. 258). The Reel's video, however, does not show appellant shopping for a used car. A few minutes later, appellant saw Devon and asked him if he was done. She said Devon replied, "yep," and they left. (Transcript p. 261). Appellant claimed she had no involvement in any crime.

{¶16} At the close of all the evidence, defense counsel renewed its Crim.R. 29 motion for acquittal which was overruled by the trial court.

{¶17} Appellant was found guilty on count one, burglary, a felony of the third degree, and counts two and three, grand theft and theft of drugs, felonies of the fourth degree. The trial court sentenced appellant to 36 months in prison on count one, 18 months on count two, and 18 months on count three. The sentences were ordered to be served concurrently for a total of 36 months in prison. Appellant was ordered to pay $6,952.49 in restitution. She was also advised regarding post-release control pursuant to R.C. 2967.28. Appellant filed a timely appeal and asserts the following three assignments of error:

{¶18} "[1.] The trial court erred when it denied appellant a meaningful opportunity to present a complete defense.

{¶19} "[2.] The trial court erred when it denied appellant's Crim.R. 29 motion for judgment of acquittal where the state failed to present sufficient evidence to support appellant's burglary and theft convictions.

{¶20} "[3.] Appellant's burglary conviction in violation of O.R.C. 2911.12(A)(3), and two theft convictions of cash, jewelry and drugs in violation of O.R.C. 2913.02(A)(1) and 2913.02(A)(1)(B)(6) are against the manifest weight of the evidence."

**{¶21}** In her first assignment of error, appellant argues the trial court erred in denying her a meaningful opportunity to present a complete defense.

**{¶22}** "The trial court has broad discretion in the admission and exclusion of evidence. *State v. Hymore* (1967), 9 Ohio St.2d 122, 128 * * *. An appellate court shall not disturb evidentiary rulings absent an abuse of discretion. Id." (Parallel citation omitted.) *State v. Golding*, 11th Dist. Lake No. 2008-L-049, 2009-Ohio-1437, ¶21. Regarding this standard, we recall the term "abuse of discretion" is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record. *State v. Ferranto*, 112 Ohio St. 667, 676-678 (1925). An abuse of discretion may be found when the trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, ¶15 (8th Dist.)

**{¶23}** "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C).

**{¶24}** "Hearsay is not admissible except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio." Evid.R. 802.

**{¶25}** The Confrontation Clause bars the "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had

7

had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004).

**{¶26}** Evid.R. 804 provides in part:

**{¶27}** "(A) Definition of unavailability. 'Unavailability as a witness' includes any of the following situations in which the declarant:

**{¶28}** "(1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement;

**{¶29}** "(2) persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so;

**{¶30}** "(3) testifies to a lack of memory of the subject matter of the declarant's statement;

**{¶31}** "(4) is unable to be present or to testify at the hearing because of death or then-existing physical or mental illness or infirmity;

**{¶32}** "(5) is absent from the hearing and the proponent of the declarant's statement has been unable to procure the declarant's attendance (or in the case of a hearsay exception under division (B)(2), (3), or (4) of this rule, the declarant's attendance or testimony) by process or other reasonable means.

**{¶33}** "A declarant is not unavailable as a witness if the declarant's exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of the declarant's statement for the purpose of preventing the witness from attending or testifying.

**{¶34}** "(B) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

8

**{¶35}** "* * *

**{¶36}** "(3) Statement against interest. A statement that was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true. A statement tending to expose the declarant to criminal liability, whether offered to exculpate or inculpate the accused, is not admissible unless corroborating circumstances clearly indicate the truth worthiness of the statement."

**{¶37}** As stated, the jury heard Linda's testimony at trial that Devon admitted going into her and Larry's residence and taking the money and items at issue. (Transcript p. 122). Appellant alleges in this assignment that the trial court improperly prevented the defense from later cross-examining Officer Beck concerning statements made by Devon in which he confessed to the crime and in which he indicated appellant was not aware of what he was doing. Appellant takes issue with the following:

**{¶38}** "[DEFENSE COUNSEL]: Okay. I think you testified at one point that actually you had had some communication with Devon?

**{¶39}** "OFFICER BECK: Yes.

**{¶40}** "[DEFENSE COUNSEL]: When?

**{¶41}** "OFFICER BECK: I believe it was the 15th.

**{¶42}** "[DEFENSE COUNSEL]: Okay.

**{¶43}** "OFFICER BECK: I believe that's when it was, the 15th.

**{¶44}** "[DEFENSE COUNSEL]: What happened?

9

**{¶45}** "OFFICER BECK: Brought him in for an interview.

**{¶46}** "[DEFENSE COUNSEL]: Okay. What happened?

**{¶47}** "OFFICER BECK: Voluntary interview.

**{¶48}** "[DEFENSE COUNSEL]: What happened?

**{¶49}** "[PROSECUTOR]: Objection. Calls for hearsay.

**{¶50}** "[DEFENSE COUNSEL]: Statement against interest. And the State opened the door.

**{¶51}** "[TRIAL JUDGE]: Alright. Counsel, you want to approach? (SIDEBAR) So one, the door was open … (* * *)

**{¶52}** "[DEFENSE COUNSEL]: He testified that he had had some communications with Devon. And in addition to that, in his own report he had mentioned that he had spoken to Devon. And Devon and … and also the text messages seemed to indicate, but there was some statements, you know, Devon now used [appellant's] phone to text Larry, also. Devon admit to his grandfather that he went back in the residence after Larry and Linda had left the store and took their money.

**{¶53}** "[TRIAL JUDGE]: Well you're reading from the report now.

**{¶54}** "[DEFENSE COUNSEL]: The officer's report.

**{¶55}** "[TRIAL JUDGE]: I haven't seen those texts, but when they were read I don't know how you can tell that Devon sent any of those texts. And I think the testimony … can confirm that. I think he can testify that … (* * *) he interviewed him.

**{¶56}** "[DEFENSE COUNSEL]: That's what I'm saying.

**{¶57}** "[TRIAL JUDGE]: I don't think he can testify as to the time …

10

{¶58} "[DEFENSE COUNSEL]: Your Honor, I will argue that it's exculpatory. I would also argue that it's being offered more for the fact that Devon came in and what he said, not for its truth. And I would also say that my intention is to proffer the officer's report and Devon's confession for purposes of appeal.

{¶59} "[TRIAL JUDGE]: Well - -

{¶60} "* * *

{¶61} "[TRIAL JUDGE]: Yeah I think you're gonna have to put the witness on and ask him about it. But I think he can testify that he did interview him. I just don't think you can ask him to repeat what he said, without having the witness here.

{¶62} "[PROSECUTOR]: And I would argue we didn't open the door. That's all we said was he interviewed him as part of his investigation. Nothing about the content. In addition, the texts that have been introduced are the texts from the Defendant to the victim. There were other texts from Devon to the victim, which - -

{¶63} "[TRIAL JUDGE]: Alright.

{¶64} "[PROSECUTOR]: I cut it off before it got to that point.

{¶65} "[TRIAL JUDGE]: Alright. Well, I'm gonna sustain this objection and you can place another question.

{¶66} "[PROSECUTOR]: Thank you, Your Honor.

{¶67} "[DEFENSE COUNSEL]: … his statement, will I be permitted to make the proffer?

{¶68} "[TRIAL JUDGE]: Well, you should probably do it, I mean certainly do it maybe at the close of the State's case.

{¶69} "[DEFENSE COUNSEL]: Okay.

11

**{¶70}** "[TRIAL JUDGE]: And then I'll make sure you get an opportunity to do it.

**{¶71}** "* * *

**{¶72}** "[DEFENSE COUNSEL]: Thank you, Your Honor. (SIDEBAR OVER)." (Transcript pp. 203-207).

**{¶73}** Following the state's case, defense counsel made the following proffer:

**{¶74}** "[DEFENSE COUNSEL]: Your Honor, at this time the Defense would proffer Defendant's Exhibit A, which is a narrative supplement that was written by Officer Clay Beck in this case, detailing the results of his investigation. Specifically mentioned is statements that he had made that apparently Devon had used [appellant's] phone to also text Larry Van Horn, and that he admitted to his grandfather that he went back in the residence after Larry and Linda had left for the store, and took their money. In addition, the second page of this narrative statement indicates that Officer Beck did interview Devon Van Horn on November 15th at the Orwell Police Department. Defendant's Exhibit B is a written statement that was given by Devon Van Horn as to his involvement. The last page is also a pre-interview form from the Orwell Police Department that apparently was signed by Devon Van Horn and witnessed, or at least signed by Officer Beck, indicating Mr. Van Horn's Miranda rights, and that those rights were waived. That he was advised of his rights. And the Defense believes that this evidence would show that Devon came in and confessed to committing the offenses in this case. That he confessed to going into, to going through a rear window in the residence. He went into the bedroom, he took money in purses from the Van Horns, and he exited and went back to a vehicle with, that [appellant] was driving. As to Mr., as to Devon Van Horn's other admission, on page 5 of his confession he was specifically

12

asked by Officer Beck, did your mother know that you stole anything from your grandpa's house. Devon's answer, no, she was oblivious. I would never put my mom in that type of situation. The Defense believes that this evidence should be committed as exculpatory evidence. We believe that it is not hearsay evidence in this case. That Devon Van Horn could not be secured for his appearance. Apparently he is in custody in another county. He is also represented by counsel. He does have a current case pending. So for the fact that the Defense would consider him unavailable for those reasons, for him being in custody, being represented by counsel, and not in a position to testify, the Defense would argue that it should be allowed to, or have been allowed to question Officer Beck specifically about what was discussed, and also about Devon's confession. We would also argue that Devon's statements were admissions against interest, as exceptions to the hearsay rule. So if I may approach, I would like to proffer Defendant's Exhibits A and B into the record, and also make them part of the file for any possible appeal on this case.

{¶75} "[TRIAL JUDGE]: Alright.

{¶76} "[DEFENSE COUNSEL]: And I have shown both of these exhibits to Mr. Jeffries for the State.

{¶77} "[PROSECUTOR]: I'll acknowledge.

{¶78} "[TRIAL JUDGE]: Alright. Well the Court will accept the proffer for purposes of making a complete record in the event there is any future appeal. But Mr. Jeffries, is there anything the State wishes to say at this time with regard to the purpose for which they might have been used, and the State's position on whether they were admissible?

13

{¶79} "[PROSECUTOR]: Yes, Your Honor. We'll largely rest on the arguments made at the bench a little while ago. But just very briefly, this is hearsay. This is an out of court statement by an out of court declarant, offered to prove the truth of the matter asserted. There is, it's the definition of hearsay. The Court allowed [defense counsel] to get into the fact that Devon confessed to this burglary. We would acknowledge that's a statement against penal interest. We would still argue it's hearsay and inadmissible, but can acknowledge that argument for a hearsay exception. However, we would argue that this decision by the Court is appropriate in that going any further than that with these exculpatory statements that [defense counsel] referenced would indeed be prejudiced and shouldn't get to the jury, as they're not statements against penal interest. They're self-serving for the Defendant. It's all the, Devon saying that [appellant] had no idea that this was gonna happen. That's not a statement against penal interest. He's, you know - - But moving forward, the unavailability. We would argue that this witness is available. We had him on our witness list. The Defendant was noticed of where he was. He's down in Trumbull County Jail, one county over. Not, it's not like he's out of state and unavailable. He is represented by counsel, but that doesn't bar his appearance here. It doesn't make him any more unavailable. And we would just argue that this is an out of court statement offered to prove the truth of the matter that the Defendant didn't know what was going on. And we would just make that argument. Thank you." (Transcript pp. 231-234).

{¶80} Following the foregoing exchange, the trial court accepted the proffer, but indicated "they will not go to the jury." (Transcript p. 236).

14

{¶81} The Supreme Court of Ohio has long held that a declarant is not "unavailable" within the meaning of Evid.R. 804(A) unless the party seeking admission of the hearsay evidence has made "'reasonable efforts in good faith to secure his presence at trial.'" *State v. Keairns*, 9 Ohio St.3d 228, 230 (1984). The record in this case does not reveal appellant made any effort to secure Devon's presence at trial. Rather, appellant merely asserts Devon was unavailable because he was in custody in the Trumbull County Jail, one county away from Ashtabula. However, "[e]ven though [a declarant] was in custody at a corrections facility, this is not 'unavailable' as defined in Evid.R. 804(A)." *State v. Esparza*, 6th Dist. Lucas No. L-84-225, 1986 Ohio App. LEXIS 7956, *47 (Aug. 22, 1986). Thus, the defense failed to demonstrate Devon's unavailability. Notwithstanding this fact, the jury heard Linda's testimony that Devon ended up admitting to going into her and Larry's home and taking the money and items at issue.

{¶82} Appellant's first assignment of error is without merit.

{¶83} In her second assignment of error, appellant contends the trial court erred in denying her Crim.R. 29 motion for judgment of acquittal. Appellant alleges the state failed to present sufficient evidence to support her burglary and theft convictions.

{¶84} In her third assignment of error, appellant maintains her burglary conviction in violation of R.C. 2911.12(A)(3), and two theft convictions of cash, jewelry and drugs in violation of R.C. 2913.02(A)(1) and (B)(6), are against the manifest weight of the evidence.

15

{¶85} Appellant's second and third assignments of error focus on sufficiency and manifest weight of the evidence. Because the assignments are interrelated, we will address them together.

{¶86} With regard to sufficiency, in *State v. Bridgeman*, 55 Ohio St.2d 261 (1978), the Ohio Supreme Court established the test for determining whether a Crim.R. 29 motion for acquittal is properly denied. The Court stated that "[p]ursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *Id.* at syllabus. "Thus, when an appellant makes a Crim.R. 29 motion, he or she is challenging the sufficiency of the evidence introduced by the state." *State v. Patrick*, 11th Dist. Trumbull Nos. 2003-T-0166 and 2003-T-0167, 2004-Ohio-6688, ¶18.

{¶87} As this court stated in *State v. Schlee*, 11th Dist. Lake No. 93-L-082, 1994 Ohio App. LEXIS 5862, *13-14 (Dec. 23, 1994):

{¶88} "'Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while 'manifest weight' contests the believability of the evidence presented.

{¶89} "'"The test (for sufficiency of the evidence) is whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. *The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence.*'"

16

{¶90} "In other words, the standard to be applied on a question concerning sufficiency is: when viewing the evidence 'in a light most favorable to the prosecution,' '(a) reviewing court (should) not reverse a jury verdict where there is substantial evidence upon which the jury could reasonably conclude that all of the elements of an offense have been proven beyond a reasonable doubt.'" (Emphasis sic.) (Citations omitted.)

{¶91} "[A] reviewing court must look to the evidence presented * * * to assess whether the state offered evidence on each statutory element of the offense, so that a rational trier of fact may infer that the offense was committed beyond a reasonable doubt." *State v. March*, 11th Dist. Lake No. 98-L-065, 1999 Ohio App. LEXIS 3333, *8 (July 16, 1999). The evidence is to be viewed in a light most favorable to the prosecution when conducting this inquiry. *State v. Jenks*, 61 Ohio St.3d 259, paragraph two of the syllabus (1991). Further, the verdict will not be disturbed on appeal unless the reviewing court finds that reasonable minds could not have arrived at the conclusion reached by the trier of fact. *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997).

{¶92} "[C]ircumstantial evidence and direct evidence inherently possess the same probative value." *State v. Fasline*, 11th Dist. Trumbull No. 2014-T-0004, 2015-Ohio-715, ¶39, citing *State v. Biros*, 78 Ohio St.3d 426, 447 (1997), citing *Jenks, supra*, paragraph one of the syllabus.

{¶93} With regard to manifest weight, this court stated in *Schlee, supra*, at *14-15:

{¶94} "'[M]anifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.

{¶95} "'In determining whether the verdict was against the manifest weight of the evidence, "(* * *) the court reviewing the entire record, *weighs the evidence* and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *)'" (Citations omitted.) * * *" (Emphasis sic.)

{¶96} A judgment of a trial court should be reversed as being against the manifest weight of the evidence "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

{¶97} With respect to the manifest weight of the evidence, we note that the jury is in the best position to assess the credibility of witnesses. *State v. DeHass*, 10 Ohio St.2d 230, paragraph one of the syllabus (1967).

{¶98} "A finding that a judgment is not against the manifest weight of the evidence necessarily means the judgment is supported by sufficient evidence." *Patterson v. Godale*, 11th Dist. Lake Nos. 2014-L-034 and 2014-L-042, 2014-Ohio-5615, ¶23, citing *State v. Arcaro*, 11th Dist. Ashtabula No. 2012-A-0028, 2013-Ohio-1842, ¶32 ("'Since there must be sufficient evidence to take a case to the jury, it follows

18

that "a finding that a conviction is supported by the *weight* of the evidence necessarily must include a finding of sufficiency.""" (Emphasis sic.) (Citations omitted.))

{¶99} For the reasons addressed below, we determine the judgment is not against the manifest weight of the evidence and, thus, further conclude it is supported by sufficient evidence.

{¶100} Appellant was convicted of burglary in violation of R.C. 2911.12(A)(3), which states:

{¶101} "(A) No person, by force, stealth, or deception, shall do any of the following:

{¶102} "* * *

{¶103} "(3) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, with purpose to commit in the structure or separately secured or separately occupied portion of the structure any criminal offense."

{¶104} Appellant was also convicted of theft in violation of R.C. 2913.02(A)(1) and (B)(6), which states:

{¶105} "(A)  No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

{¶106} "(1) Without the consent of the owner or person authorized to give consent;

{¶107} "* * *

19

{¶108} "(B)

{¶109} "(1) Whoever violates this section is guilty of theft.

{¶110} "* * *

{¶111} "(6) If the property stolen is any dangerous drug, a violation of this section is theft of drugs, a felony of the fourth degree, or, if the offender previously has been convicted of a felony drug abuse offense, a felony of the third degree."

{¶112} In this case, appellant was prosecuted under a theory of complicity. "'To support a conviction for complicity by aiding and abetting (* * *), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal.' *State v. Johnson*, 93 Ohio St.3d 240, * * * syllabus (2001). 'Such intent may be inferred from the circumstances surrounding the crime.' *Id.* 'Criminal intent (* * *) can be inferred from the presence, companionship and conduct of a criminal defendant both before and after the offense is committed, *State v. Pruett* (1971), 28 Ohio App.2d 29, 34 * * *, (* * *), and may be proven by either direct or circumstantial evidence. *See State v. Mootispaw* (1996), 110 Ohio App.3d 566, 570, * * *, (* * *); *State v. Cartellone* (1981), 3 Ohio App.3d 145, 150, * * *, (* * *).' *State v. Nievas*, 121 Ohio App.3d 451, 456-457 * * * (8th Dist.1997). (Parallel citations omitted.)" *State v. Weimer*, 11th Dist. Lake No. 2013-L-005, 2016-Ohio-3116, ¶51 (Grendell, J., concurred in part and dissented in part, with a Dissenting Opinion).

{¶113} As stated, on November 3, 2014, Linda and Larry received an unexpected visit from appellant and Devon. Upon their arrival, Linda and Larry told appellant they were about to go to Wal-Mart. Appellant asked to use the bathroom which faced the

20

back of the house and had a window which was accessible from the deck. About three to five minutes later, appellant exited the bathroom. The four individuals visited briefly. Appellant and Devon then left the residence. Linda and Larry left about five minutes later.

{¶114} En route to Wal-Mart, Linda saw appellant and Devon at a nearby Shell gas station. Linda said appellant and Devon waved and she waved back. Linda testified that appellant was in the driver's seat and Devon was pumping gas.

{¶115} After the couple returned home, Linda went into the bathroom and noticed the radio antenna, which was usually hooked outside of the bathroom window, was now hanging down to the floor. She also noticed that the radio and some books had been moved to the opposite side of the window ledge. The window opened when Linda reached up and pushed on it. Linda testified that Larry is "very anal about the windows being locked" and that they had "all the windows locked up for the winter time." (Transcript p. 101). Larry testified he was "paranoid about keeping that window locked." (Transcript p. 137). Larry stated every time he went to the bathroom he made sure the window was locked because it was very easy to get in and out of.

{¶116} Linda kept money in various purses in her bedroom closet and in her freezer. Linda testified that Devon knew her hiding places because she had given him money in the past. When Linda went to check on her money, she discovered it was all gone. Most of her jewelry was also missing. In addition, prescription pills were also gone.

{¶117} Larry called appellant to talk with her about the theft. Larry testified that appellant said Devon was "out of wack" and did not want to talk. (Transcript p. 139).

Larry also contacted the police. Officer Beck responded, spoke with Linda and Larry, and took pictures at the residence. After the officer left, Larry called/texted appellant several more times requesting that she return the money and items so they would not have to prosecute her. In order to get appellant to confess, Larry bluffed and told her they had a security camera at the residence. Larry further bluffed and told appellant that she and Devon were observed committing the crimes. The bluff worked to the extent that Devon ended up admitting to going into Linda and Larry's home and taking the money and items at issue.

{¶118} Appellant claimed in a text message to Larry that the bathroom window was already open when she used the facilities and that she was talking to an outdoor cat through the open window. However, Larry testified his cats are "scaredy" cats and that they were inside the house. (Transcript p. 154).

{¶119} Officer Beck testified he went through the residence with Linda and Larry. The couple told him what was missing. Officer Beck observed footprints in the grass from an adjacent property to the back deck. Based upon his interview with Linda and Larry, the officer determined that appellant and Devon were suspects.

{¶120} Officer Beck viewed the videos from the Shell gas station and from Reel's. (State's Exhibits 16 and 17). He testified that the video from Shell confirms that appellant was at the station after she and Devon left Linda and Larry's house. The Shell video also shows Linda and Larry's vehicle passing the gas station. He also testified that the video from Reel's shows Linda and Larry's residence. The Reel's video also shows both vehicles leaving the house, then minutes later, shows appellant and Devon returning to the area.

22

{¶121} Appellant and Devon voluntarily came to the station for interviews. Officer Beck said appellant was "very vague. Kind of evasive. Every time we'd ask a question she'd try changing the subject to something else." (Transcript p. 174). Appellant claimed the bathroom window was open. Appellant indicated she and Devon left Linda and Larry's residence, went to the Shell gas station, went to Reel's, then went back to Linda and Larry's to "try to catch them before they left," even though appellant waved to the couple as they passed the gas station on their way to Wal-Mart. (Transcript p. 175).

{¶122} According to appellant, she was on probation for a drug possession charge. Appellant indicated while she and Devon were visiting Linda and Larry, appellant talked to an outdoor cat through the open bathroom window. Before leaving the bathroom, appellant said she closed the window but did not lock it.

{¶123} Appellant said she and Devon later left the residence and went to the Shell gas station. She stated that Devon had to use the bathroom so they headed back to Linda and Larry's house. Appellant said she went to Reel's to look for a used car while Devon went to Linda and Larry's. The Reel's video, however, does not show appellant shopping for a used car. A few minutes later, Devon came out and they left. Appellant claimed she had no involvement in any crime.

{¶124} The record establishes appellant was aware Linda and Larry were going to leave their house and go to Wal-Mart. Appellant used the couple's bathroom. That bathroom window was always locked. However, after appellant used the bathroom the window was open. Appellant later saw Linda and Larry drive by while she and Devon were at the Shell gas station. Devon apparently needed to use the restroom. Instead of using the restroom at the gas station, or at another nearby establishment, appellant

23

drove Devon back to Linda and Larry's home, even though she knew they were not home. Appellant parked at a nearby property while Devon, who appellant claims was somehow privileged to enter Linda and Larry's home, went in through the open bathroom window. Appellant pulled away as soon as Devon came back to the car. When Linda and Larry came home from Wal-Mart, they discovered that approximately $19,000 in cash, jewelry, and prescription medication was missing. Devon admitted to going into Linda and Larry's home and taking the money and items at issue. Based on the facts presented, a reasonable juror could conclude from the circumstances that appellant "supported, assisted, encouraged, cooperated with, advised, or incited" Devon and shared his criminal intent. *See Johnson, supra,* at syllabus.

{¶125} Pursuant to *Schlee, supra*, there is sufficient evidence upon which the jury could reasonably conclude beyond a reasonable doubt that the elements of burglary and theft were proven. Thus, the trial court did not err in overruling appellant's Crim.R. 29 motion.

{¶126} Also, the jury chose to believe the state's three witnesses over appellant's testimony. *DeHass, supra*, at paragraph one of the syllabus. Based on the evidence presented, as previously stated, we cannot say that the jury clearly lost its way in finding appellant guilty of the crimes as charged. *Schlee, supra*, at *14-15; *Thompkins, supra*, at 387.

{¶127} Appellant's second and third assignments of error are without merit.

**{¶128}** For the foregoing reasons, appellant's assignments of error are not well-taken. The judgments of the Ashtabula County Court of Common Pleas are affirmed.

DIANE V. GRENDELL, J., concurs with a Concurring Opinion.

TIMOTHY P. CANNON, J., concurs in part and concurs in judgment only in part with a Concurring Opinion.

_____

DIANE V. GRENDELL, J., concurs with a Concurring Opinion.

**{¶129}** I concur in the judgment and opinion of this court.

**{¶130}** I write separately to support the majority's position that the proper standard of review on the issue of whether Devon Vanhorn's statement was properly admitted as a statement against interest pursuant to Evidence Rule 804(B)(3) is abuse of discretion.

**{¶131}** Contrary to the position of the other concurring judge, the Ohio Supreme Court has affirmed the abuse of discretion standard: "[a] decision whether to admit the hearsay statement of an unavailable declarant pursuant to Evid.R. 804(B)(3) [statement against interest] is one within the discretion of the trial court." *State v. Swann*, 119 Ohio St.3d 552, 2008-Ohio-4837, 895 N.E.2d 821, ¶ 33, quoting *State v. Sumlin*, 69 Ohio St.3d 105, 108, 630 N.E.2d 681 (1994).

**{¶132}** While the other concurring judge is correct that, "[w]hen a court's judgment is based on an erroneous interpretation of the law, an abuse-of-discretion standard is not appropriate," the issue before this court is one of *application*, not *interpretation*. "Ordinarily, we review a trial court's hearsay rulings for an abuse of discretion." *State v.*

*McKelton*, __ Ohio St.3d __, 2016-Ohio-5735, __ N.E.3d __, ¶ 97; *State v. Dever*, 64 Ohio St.3d 401, 410, 596 N.E.2d 436 (1992) ("[t]he trial court has broad discretion to determine whether a declaration should be admissible as a hearsay exception").

{¶133} Therefore, the standard of review as set forth in the majority opinion is correct.

_____

TIMOTHY P. CANNON, J. concurring in part and concurring in judgment only in part.

{¶134} I respectfully concur in part and concur in judgment only in part with the opinion of the majority. I write to discuss our standard of review with regard to admission of hearsay evidence. I respectfully disagree with the majority that the standard is abuse of discretion. I believe a trial court's determination of what constitutes hearsay should be reviewed de novo. *See, e.g., State v. Romeo*, 11th Dist. Portage No. 2007-P-0066, 2008-Ohio-1499, ¶9 (citations omitted) ("Because we are asked to ascertain whether the trial court correctly applied the law to the facts of the present case, we review de novo[.]").

{¶135} All evidence must pass the relevancy test set forth in Evid.R. 401. Pursuant to Evid.R. 403, the trial court must determine whether otherwise relevant evidence is not admissible for the reasons stated. Indeed, as this court has found, there are many instances where we review a trial court's ruling on the admission of evidence for an abuse of discretion. *See, e.g., Adams v. Pitorak & Coenen Invests., LTD.*, 11th Dist. Geauga No. 2011-G-3019, 2012-Ohio-3015, ¶41; *Harris v. Huff*, 11th Dist. Trumbull No. 2008-T-0090, 2010-Ohio-3678, ¶86.

{¶136} However, it is worth clarifying that hearsay is a different matter. Hearsay is inadmissible evidence, unless there is a law that provides otherwise. Evid.R. 802. The trial court does not have discretion to admit hearsay evidence unless the law provides an exception for its admission. *Jack F. Neff Sand & Gravel, Inc. v. Great Lakes Crushing, Ltd.*, 11th Dist. Lake No. 2012-L-145, 2014-Ohio-2875, ¶23. "When a court's judgment is based on an erroneous interpretation of the law, an abuse-of-discretion standard is not appropriate." *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, ¶13 (citations omitted). Whether an exception applies to admit hearsay evidence is often times a mixed question of fact and law. For example, a trial judge may have to make a factual determination, supported by competent credible evidence, as to whether a declarant is "unavailable." The decision to admit or deny must then comply with Evid.R. 802, a legal determination we review de novo.

{¶137} I agree with the concurring opinion that the question can be one of application, not of interpretation. However, I disagree with any suggestion that the trial court has "discretion" to admit hearsay. Otherwise, the trial court would be in a position to write its own rules regarding the admissibility of hearsay.