[Cite as *State v. Phillips*, 2017-Ohio-1204.]

IN THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2016-L-029** |
| JODY T. PHILLIPS, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 2015 CR 000928.

Judgment: Affirmed.


*Charles E. Coulson,* Lake County Prosecutor, and *Anna C. Kelley,* Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Charles R. Grieshammer,* Lake County Public Defender, and *Aaron T. Baker,* Assistant Public Defender, 125 East Erie Street, Painesville, OH 44077 (For Defendant-Appellant).


CYNTHIA WESTCOTT RICE, P.J.

{¶1} Appellant, Jody T. Phillips, appeals the judgment of conviction entered by the Lake County Court of Common Pleas, after trial by jury, on one count of Possession of Chemicals for the Manufacture of Drugs. At issue is whether the trial court properly admitted a copy of certain records kept in the National Precursor Log Exchange ("NPLEx"), a national database which tracks all purchases or attempted purchases of pseudoephedrine and ephedrine from pharmacies, under the business records

exception to the hearsay rule. For the reasons below, we affirm the trial court's judgment.

{¶2} On November 3, 2015, appellant travelled from Ashtabula, Ohio to Mentor, Ohio with three individuals, Alejandro Martinez, Joseph Michael Shaw, and David Hettmansperger, in Martinez's GMC Jimmy. The individuals first stopped at a Walgreens where Shaw attempted to purchase Sudafed. The pharmacy, however, refused to sell Shaw the drug because he was rejected by NPLEx. They then drove to Target; after pulling in and parking in an area where employees usually park, Martinez, popped the hood and exited the vehicle to check the engine. Hettmansperger exited the vehicle and entered the store to purchase Sudafed. Shaw also left the vehicle and entered a nearby Arby's restaurant where he shot heroin in the bathroom.

{¶3} Patrolman Brian Vernick and Detective Matthew Alvord, each of the Mentor Police Department, were in an unmarked vehicle in the Target parking lot, working retail theft. The officers noticed a GMC Jimmy parked in what they perceived as a strange location. They observed Shaw leave the vehicle and run to Arby's. The officers observed Hettmansperger leave Target and return to the vehicle after which Hettmansperger walked over to the Arby's, then return to the vehicle. Shaw returned shortly thereafter. Martinez and appellant remained seated in the front of the vehicle until Martinez popped the hood and exited the Jimmy.

{¶4} When Martinez exited, the officers walked toward the GMC Jimmy; although they were in plain clothes, their badges were visible. Hettmansperger approached Officer Vernick and asked to speak with him away from the vehicle, while Detective Alvord addressed the remaining men. Hettmansperger explained he wanted to speak with Office Vernick privately so the others did not hear him. Based on their

2

conversation, the officer determined Hettmansperger, Shaw, and appellant were attempting to purchase Sudafed or pseudoephedrine for the purpose of manufacturing methamphetamine. Hettmansperger disclosed he had just made the purchase and the box was in the vehicle.

{¶5} Meanwhile, Detective Alvord asked Shaw to exit the rear passenger seat of the vehicle and spoke with him. Because Shaw appeared overly nervous, the detective patted him down for weapons. While doing so, he located a syringe in Shaw's pocket. After detaining Shaw for the syringe, the detective located a denial-of-pseudoephedrine-purchase receipt on Shaw's person. The detective ultimately learned Shaw had attempted to purchase pseudoephedrine at Walgreens in Mentor and the men were at Target to purchase pseudoephedrine.

{¶6} The officers conferred with one another regarding Hettmansperger's and Shaw's statements. Hettmansperger was patted down, but nothing of evidentiary value was found on him. Appellant was then asked to exit the vehicle and confronted about the box of pseudoephedrine in the vehicle. Appellant appeared standoffish and not interested in talking with the officers. Appellant ultimately stated that pseudoephedrine was "somewhere" in the car. Detective Alvord obtained permission from Martinez to search the vehicle, who appeared upset when he learned about Shaw's syringe and the investigation relating to pseudoephedrine. During the search, the detective found a box of Sudafed that was shoved under the front-passenger seat in a space near the seat-adjustment rail which is adjacent to the center console. The box appeared slightly damaged.

{¶7} Detective Alvord confronted appellant about the box; appellant denied placing it in that location and claimed Hettmansperger must have placed the

3

pseudoephedrine under the seat. The detective stated, however, that Hettmansperger was seated in the rear driver's-side compartment and was not observed entering the front-passenger compartment.

{¶8} Appellant was indicted on one count of illegal assembly or possession of chemicals for the manufacture of drugs, a felony of the third degree, in violation of R.C. 2925.041, and a forfeiture specification pursuant to R.C. 2941.1417 and R.C. 2981.04. Appellant waived his right to be present at arraignment and a plea of "not guilty" was entered on his behalf. The state filed a notice of complicity stating that, in addition to offering evidence that appellant was the principal offender, it would also offer evidence that appellant was a co-complicitor in aiding and abetting Shaw and/or Hettmansperger in the charged offense.

{¶9} Appellant filed a waiver of right to a jury trial on the forfeiture specification and a jury trial commenced on the "illegal assembly or possession" count. At trial, Hettmansperger testified he, as a result of the underlying incident, had pleaded guilty to attempted illegal assembly or possession of chemicals for the manufacture of drugs. As a result of the plea, and in exchange for his testimony, the state agreed to recommend community control rather than prison. As of the date of trial, Hettmansperger had not been sentenced.

{¶10} Hettmansperger testified that he and Shaw are very close friends; he stated he and Shaw had visited appellant the night before the incident and, during the visit, appellant requested Shaw obtain a box of Sudafed. The next day, Shaw's purchase was rejected and, according to Hettmansperger, appellant advised him to purchase the drug. Hettmansperger testified he purchased the Sudafed at Target because appellant indicated he could get violent if he was unable to obtain a box. After

4

buying the drug, Hettmansperger stated he delivered the box to appellant, who was sitting in the front passenger seat of the Jimmy. Hettmansperger testified he observed appellant shove the box under the seat.

{¶11} Hettmansperger testified appellant wanted Sudafed to make methamphetamine ("meth"). When asked how he knew this, Hettmansperger answered "[b]ecause he's done it a couple times in the Economy Inn and stuff." Hettmansperger stated that he had not directly observed appellant making meth, but had helped appellant clean up a plastic bottle which he knew was used in the manufacture of meth. Hettmansperger testified appellant provided him with meth on the day of the purchase and that he had purchased Sudafed for appellant maybe one other time.

{¶12} Shaw testified that he had entered pleas of guilty to one count of attempted illegal assembly or possession of chemicals for the manufacture of drugs and one count of possession of heroin. He stated that, as a result of the plea and in exchange for his testimony, the state agreed to recommend an 18-month prison term. Shaw had not been sentenced as of the date of the trial.

{¶13} Shaw's version of the events was similar to Hettmansperger's. He testified that after he and Hettmansperger met with appellant on the previous night, it was his understanding that he would purchase a box of Sudafed for appellant to use in the manufacture of meth. He testified that, although he had not previously made such a purchase for appellant, he had made similar purchases for other, unnamed individuals "quite a few" times. Shaw testified he attempted to purchase Sudafed at Walgreens in Mentor, but was rejected. He stated that the group subsequently drove to Target. Upon arriving, he testified he went to an Arby's restaurant across the street and used heroin in the bathroom.

5

{¶14} Magdalene Stimac, a pharmacist employed by the Walgreens in Mentor, testified that Shaw had attempted to purchase pseudoephedrine in the store on November 3, 2015, but was denied. The state introduced the denial receipt from the attempted purchase in question. She testified regarding Walgreens' procedure when a customer attempts to purchase pseudoephedrine or ephedrine products. She stated a customer is required to produce a form of identification. The ID is then scanned into the NPLEx system, a data base which monitors the purchase of such drugs. NPLEx is owned and operated by a private company, Appriss.

{¶15} Stimac testified that pseudoephedrine sales began being regulated in 2006; and prior to NPLEx, Walgreens utilized a tracking system called MethCheck; the pharmacy has been using NPLEx since 2014. According to Stimac, the system tracks how much pseudoephedrine is sold to individuals and will not permit a sale if a customer attempts to purchase more than 3.6 grams in a single day or 9 grams in a thirty-day period. If a customer attempts to purchase pseudoephedrine and he or she has exceeded these limits, the purchase is blocked and recorded in real time in the NPLEx system. Walgreens then issues the would-be customer a receipt with a transaction identification number that the customer can utilize to see why he or she was denied.

{¶16} The state also called Sergeant Brad Kemp, of the Lake County Narcotics Agency, as an expert witness to testify that pseudoephedrine is a necessary chemical for the manufacture of meth as well as his understanding of how the NPLEx system keeps its records. With respect to the latter issue, the state submitted an uncertified copy of NPLEx records relating to appellant's purchase/attempted purchase of pseudoephedrine at multiple pharmacies between January 2015 and October 2015.

6

Overall, the record indicated appellant purchased/attempted to purchase pseudoephedrine 31 times. Defense counsel objected to the introduction of this purported record, arguing that the document was hearsay evidence, which the state did not dispute. Defense counsel further asserted that the business records exception to the hearsay rule was inapplicable because Sergeant Kemp was neither the custodian of the records nor a "qualified witness." Defense counsel maintained that Sergeant Kemp merely uses the records for investigative purposes, but was not qualified to lay a foundation regarding whether or how each individual pharmacy kept the NPLEx records in the regular course of their business activities. And he did not testify to possessing knowledge of how the record had been created by each pharmacy or how the records are kept in the course of Appriss' regularly conducted business activity.

{¶17} In response, the state argued that Stimac had previously testified to the manner in which the NPLEx system functions; moreover, Sergeant Kemp testified that he uses the system in the course of investigating meth crimes. According to the state, this testimony was sufficient to lay a foundation triggering the business records exception.

{¶18} The trial court agreed with the state and the record was submitted to demonstrate that appellant, between January 2015 and October 2015, had purchased or attempted to purchase pseudoephedrine, in varying quantities, on 31 separate occasions. Sergeant Kemp testified that the records were the most important piece of evidence in the case for formulating his opinion that appellant was engaged in the illegal assembly or possession of chemicals for the manufacture of drugs. He stated the frequency of the purchases indicated appellant's intent to use pseudoephedrine for meth production.

7

{¶19} The jury ultimately returned a verdict of "guilty" on the "illegal assembly or possession" count. Appellant was sentenced to a term of 36 months in prison and the box of pseudoephedrine was forfeited to the Mentor Police Department. Appellant now appeals assigning the following error:

{¶20} "The trial court erred to the prejudice of appellant by permitting admission of NPLEx records into evidence, in violation of Evid.R. 801, 802, 803(6), and 805."

{¶21} Appellant asserts the trial court erred in admitting the copy of NPLEx records because Sergeant Kemp was neither a custodian of the records nor a "qualified witness," as required by Evid.R. 803(6). Appellant notes that Sergeant Kemp admitted he simply accessed the records and printed them. Appellant underscores that the NPLEx database is made up of information transmitted from private companies and stored. Because Sergeant Kemp did not testify he had personal knowledge that these companies kept the records in the course of a regularly conducted business activity, his testimony was insufficient to lay an adequate foundation for the business records exception to the hearsay rule.

{¶22} Evid.R. 803(6), the business records exception to the rule prohibiting the admission of hearsay, provides:

{¶23} A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

8

{¶24} Accordingly,

{¶25} "To qualify for admission under Rule 803(6), a business record must manifest four essential elements: (i) the record must be one regularly recorded in a regularly conducted activity; (ii) it must have been entered by a person with knowledge of the act, event or condition; (iii) it must have been recorded at or near the time of the transaction; and (iv) a foundation must be laid by the 'custodian' of the record or by some 'other qualified witness.'" *State v. Davis,* 116 Ohio St.3d 404, 2008-Ohio-2, ¶171, quoting Weissenberger, Ohio Evidence Treatise 600, Section 803.73 (2007).

{¶26} "A 'qualified witness' for this purpose would be someone with 'enough familiarity with the record-keeping system of the business in question to explain how the record came into existence in the ordinary course of business.'" *State v. Hood*, 135 Ohio St.3d 137, 147, 2012-Ohio-6208, quoting 5 McLaughlin, Weinstein's Federal Evidence Section 803.08[8][a] (2d Ed.2009).

{¶27} The state does not contest the hearsay nature of the NPLEx records; instead, it maintains Ms. Stimic and Sergeant Kemp were "qualified witnesses" whose combined testimony was sufficient to lay a foundation for their admission. In support, the state cites the Fifth Appellate District's opinion in *State v. Coleman*, 5th Dist. Richland No. 14-CA-82, 2015-Ohio-3907.

{¶28} In *Coleman*, the state obtained NPLEx records and subsequently subpoenaed business records of the appellant's pseudoephedrine purchases from four separate pharmacies. After obtaining the records, the state sought to admit these records through the testimony of pharmacists employed by the pharmacies in question. The Fifth District determined "each witness testified that the records were kept in the ordinary course of business and each had enough familiarity with the record keeping to explain how the records came in to existence in the ordinary course of business.

9

Accordingly, the reports were admissible under Evid.R. 803(6)." *Coleman*, *supra*, at ¶42.

{¶29} *Coleman* stands for the principle that employees of specific pharmacies who are familiar with their pharmacies' record-keeping system as it relates to NPLEx data are "other qualified witnesses" who are competent to lay a foundation for the admission of their respective pharmacy's business records. The state, in *Coleman*, did not seek to admit copies of general NPLEx records. In this case, however, the state sought to admit a copy of the NPLEx records themselves (i.e., not records subpoenaed from specific pharmacy records) through the testimony of a police officer who utilizes the records for investigative purposes. Although Sergeant Kemp gave testimony of how the NPLEx data system operates, when asked how the information is transmitted into the system, he testified "I'm not the designer and I'm not very technologically advanced. I know how to look." Moreover, he is not an employee of Appriss, the company who operates the system, and did not testify to any knowledge of the specific record-keeping practices of that company.

{¶30} Further, the state did not subpoena specific records from the individual pharmacies that appear on the record. Even though Stimic testified to how Walgreens records are kept, she is a Walgreens employee, not an employee of Appriss. In this regard, it is unclear, under *Coleman*, whether she could function as an "other qualified witness" to lay an adequate foundation for the NPLEx records, which were introduced during Sergeant Kemp's testimony. Given these points, *Coleman* is fundamentally distinguishable from the matter sub judice.

{¶31} Our research fails to reveal any case holding the testimony of a police officer, who utilizes the NPLEx system for investigative purposes, unto itself, is sufficient

10

to lay a foundation to admit a copy of the NPLEx system records under the business records exception. *Coleman* affirmed the admission of business records of pseudoephedrine purchases/denials that were subpoenaed from various pharmacies through the testimony of employees of those pharmacies who were familiar with the record-keeping practices of those businesses. In *State v. McDonald*, 5th Dist. Fairfield No. 15-CA-45, 2016-Ohio-2699, the Fifth District determined that the testimony of a police officer who used the system, in conjunction with three pharmacists from separate pharmacies who identified the records from their respective stores as well as the purchases and blocks contained in the records, was sufficient to lay a foundation for the admission of the records.

{¶32} Here, although Ms. Stimic testified to Walgreens' use of the NPLEx system and identified Shaw's individual-"blocked" receipt record from Walgreens, the state did not seek to use Ms. Stimic to lay a foundation for any of the Walgreens purchases/attempted purchases recorded in the NPLEx report introduced during Sergeant Kemp's testimony. Stimac's testimony was sufficient to introduce Shaw's denial receipt; because, however, she was not asked to specifically lay a foundation for appellant's NPLEx record vis-à-vis his purchases or attempted purchases at Walgreens, her testimony, under the circumstances, was inapplicable to that particular record.

{¶33} Further, Sergeant Kemp testified to how the information recorded in the system is obtained, i.e., by swiping a prospective purchaser's identification. He also testified he knows how to look up information in the system and he testified to the information that the system records, e.g., the time, date, salesperson, purchaser, and quantity purchased. Although this testimony is useful for interpreting the record itself, the sergeant's testimony does not necessarily demonstrate "'enough familiarity *with the*

11

*record-keeping system of the business in question* [i.e., Apriss] to explain how the record came into existence in the ordinary course of business.'" (Emphasis added.) *Hood*, *supra*. We therefore hold, under the facts of this case, the state failed to lay an adequate foundation to introduce the copy of the NPLEx record detailing appellant's purchases/attempted purchases between January 2015 and October of 2015.

{¶34} Under the circumstances of this case, however, any error in admitting the report would be harmless beyond a reasonable doubt. First, Sergeant Kemp testified to the process of manufacturing meth and underscored that pseudoephedrine is a necessary ingredient in the process. The on-site officers testified to appellant's standoffish behavior, his admission that pseudoephedrine was in the vehicle, and the location of the box under appellant's seat.

{¶35} Moreover, even though Hettmansperger and Shaw entered guilty pleas in exchange for the prosecution's agreement to recommend a less severe sentence, which was conditioned upon their cooperation and testimony, each co-defendant stated their testimony was truthful and each had inherently consistent renditions of the events. Hettmansperger testified he knew appellant had previously made meth and, in fact, had given him meth earlier on the day in question. He testified he had purchased pseudoephedrine for appellant one time previously. And, after purchasing the pseudoephedrine for appellant, Hettmansperger testified he handed appellant the box. He also testified he observed appellant shove it under his seat.

{¶36} Moreover, Shaw testified appellant wanted him to purchase pseudoephedrine for him; Shaw further testified he knew appellant was going to use the pseudoephedrine to make meth. Shaw stated he attempted to purchase

pseudoephedrine at Walgreens for appellant on November 3, 2015, but was denied. Ms. Stimic ultimately identified the denial receipt.

**{¶37}** Given the foregoing evidence, and despite the introduction of the NPLEx report, there was sufficient, credible evidence for the jury to conclude appellant was guilty of possessing chemicals for the manufacture of drugs beyond a reasonable doubt.

**{¶38}** Appellant's assignment of error lacks merit.

**{¶39}** For the reasons discussed in this opinion, the judgment of the Lake County Court of Common Pleas is affirmed.

DIANE V. GRENDELL, J., concurs in judgment only,

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

_____

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

**{¶40}** I respectfully dissent.

**{¶41}** The majority finds that the trial court properly admitted a copy of certain records kept in the National Precursor Log Exchange ("NPLEx"), a national database which tracks all purchases or attempted purchases of pseudoephedrine and ephedrine from pharmacies, under the business records exception to the hearsay rule. For the reasons stated, I disagree.

**{¶42}** "'The trial court has broad discretion in the admission and exclusion of evidence. *State v. Hymore* (1967), 9 Ohio St.2d 122, 128 (* * *). An appellate court shall not disturb evidentiary rulings absent an abuse of discretion. Id.' (Parallel citation omitted.) *State v. Golding*, 11th Dist. Lake No. 2008-L-049, 2009-Ohio-1437, ¶21.

13

Regarding this standard, we recall the term 'abuse of discretion' is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record. *State v. Ferranto*, 112 Ohio St. 667, 676-678, * * * (1925). An abuse of discretion may be found when the trial court 'applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact.' *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, * * *, ¶15 (8th Dist.)" (Parallel citations omitted.) *State v. Vanhorn*, 11th Dist. Ashtabula No. 2016-A-0025, 2017-Ohio-704, ¶22.

**{¶43}** "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C).

**{¶44}** "Hearsay is not admissible except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio." Evid.R. 802.

**{¶45}** Evid.R. 803 provides in part:

**{¶46}** "The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

**{¶47}** "* * *

**{¶48}** "**(6) Records of regularly conducted activity.** A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of

14

that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term 'business' as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit."

{¶49} Evid.R. 805 states: "Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules."

{¶50} Evid.R. 901 provides in part:

{¶51} "**(B) Illustrations.** By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

{¶52} "* * *

{¶53} "(10) *Methods Provided by Statute or Rule.* Any method of authentication or identification provided by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio or by other rules prescribed by the Supreme Court."

{¶54} In this case, the state called Sergeant Brad Kemp, of the Lake County Narcotics Agency, as an expert witness to testify regarding pseudoephedrine and the record-keeping of NPLEx. NPLEx is an electronic record kept across 30 states. NPLEx registers the identification information every time a person purchases over the counter pseudoephedrine at pharmacies. A record is kept as to how much each person has purchased and over what time frame. NPLEx is run by Appriss, a private company.

15

**{¶55}** The trial court admitted, over repeated objection by the defense, the NPLEx records through the testimony of Sergeant Kemp, reflecting 31 alleged purchases of pseudoephedrine by appellant from January 2015 through October 2015. Due to the admission of that information, Sergeant Kemp opined that the purchases were for illicit purposes. However, Sergeant Kemp is a police officer. Sergeant Kemp was not a custodian of the NPLEx records. Sergeant Kemp, through his own admission, indicated he knew how to pull up information in the system and merely printed it out. The admitted records were not certified from NPLEx, Appriss, or any pharmacy.

**{¶56}** Contrary to the majority's position, there is no "harmless error" in this case as the state's most powerful evidence came through Sergeant Kemp's testimony and the admitted NPLEx records. The admission of the NPLEx records through a police officer who merely printed them out constitutes hearsay within hearsay. Again, Sergeant Kemp is not a custodian of the NPLEx records, by his own testimony. Sergeant Kemp is also not an "other qualified witness as provided by Rule 901(B)(10)." *See* Evid.R. 803(6). Admitting the NPLEx records in this case was admitting hearsay within hearsay. *See* Evid.R. 805.

**{¶57}** For the foregoing reasons, because this matter should be reversed and remanded, I respectfully dissent.