[Cite as *State v. Boone*, 2018-Ohio-772.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                    Court of Appeals No. L-16-1246

  Appellee                              Trial Court No. CR0201602190

v.

Tommie Boone                                **DECISION AND JUDGMENT**

  Appellant                             Decided:  March 2, 2018

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Claudia A. Ford, Assistant Prosecuting Attorney, for appellee.

Lawrence A. Gold, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Defendant-appellant, Tommie Boone, appeals the September 29, 2016

judgment of the Lucas County Court of Common Pleas which, following a jury trial

finding him guilty of burglary and grand theft of a motor vehicle, sentenced appellant to a

total of seven years of imprisonment. For the following reasons, we affirm the trial court's judgment.

{¶ 2} On June 28, 2016, appellant was indicted on charges stemming from the June 20, 2016 burglary and theft of a motor vehicle from a residence located in Toledo, Lucas County. Appellant entered not guilty pleas to the charges.

{¶ 3} A jury trial in the matter commenced on September 26, 2016, and the following relevant evidence was presented. The June 20, 2016, 4:27 a.m., 9-1-1 call involving appellant was authenticated by the supervisor of communications for the city of Toledo Fire Department. The tape was then played for the jury. The caller reported a man "creeping" around a neighbor's backyard and looking into the windows in the area of Bowen and Eastbrook Roads in Toledo, Lucas County, Ohio. He was described as a black male with a white hat, grey sweatpants, and a blue shirt. The citizen on the tape also reported that she confronted the male who stated that he was looking for his cell phone. She stated that he then walked down two streets west from Bowen, turned and proceeded northbound.

{¶ 4} Toledo Police Officer Kyle Martin responded to the "suspicious person" 9-1-1 call at approximately 4:30 a.m. Officer Martin stated that he was driving a marked police cruiser and spotted a man in the area reported and fitting the description given. Officer Martin testified that he approached appellant and asked him if he was looking for something or was lost. According to Martin, appellant stated that he had been at his

2.

girlfriend's house near Douglas Road, had been out walking to "clear his mind" and was lost.

{¶ 5} Officer Martin then asked appellant if he had any identification; he responded negatively and gave consent to Martin to search his person. Officer Martin testified that he found a wallet in appellant's right rear pants pocket, three sets of keys, and $10. Appellant also had a cell phone. Officer Martin testified that the wallet had the Ohio driver's license of a different individual; appellant stated that he found the wallet on the ground. Regarding the keys, appellant stated that one set belonged to his friend who had a Buick, though the key had GM on it. Appellant stated that the second set belonged to his girlfriend who lived on 14th Street in Toledo, Ohio. Appellant could not explain the third set of keys. Photographic evidence of the items was admitted into evidence.

{¶ 6} Officer Martin testified that he went to the nearby address listed on the driver's license. Martin made contact with the homeowner who had been asleep and did not realize that his wallet and vehicle were missing. It was also discovered that the homeowner's daughter's purse and her boyfriend's cell phone were missing. The items had been left in the kitchen. Officer Martin observed that a kitchen window screen was lifted up; the homeowner stated that he did not leave it that way. There were two small holes cut in the screen which appeared close to the screen locks and would allow the lock to be slid over and the screen raised up. Also, the door from the kitchen leading to the garage was "jarred" open; the garage door was also unlocked and "jarred" open. Officer

3.

Martin stated that the homeowner's vehicle was located a few blocks away. During the interview with the victims, appellant was in the back of Martin's patrol vehicle.

{¶ 7} The homeowner testified identifying the photographic evidence and the items that were taken. He stated that he did not give appellant permission to be in his home or possess his wallet, keys, or vehicle. Similarly the homeowner's daughter testified that she left her purse in the kitchen upon going upstairs to bed around 1:00 a.m.; she stated that her fiancé left his black Samsung Note cell phone in the kitchen. She identified the photographs of the items. She stressed that neither the purse nor the cell phone were left in her father's minivan (where they were later recovered.) The daughter stated that she did not give appellant permission to have her purse.

{¶ 8} Toledo Police Officer Kyle Rogalski testified that he was in a separate patrol vehicle and responded to the dispatch of a suspicious person. Officer Martin was already on the scene when he arrived. Rogalski's testimony regarding the initial encounter with appellant mirrored Officer Martin's. Leaving Officer Martin at the home of the victims, Officer Rogalski took the set of keys that were in appellant's pocket and identified by the victim and pressed the panic button as he went around the neighborhood. Several blocks away he observed a vehicle with its lights flashing and horn sounding. Once in the vehicle he observed the homeowner's daughter's purse. The vehicle was towed and returned to the owner a few days later.

{¶ 9} Toledo Police Detective Jeffrey Jackson, of the Scientific Investigations Unit, testified that he processed the vehicle for fingerprints. Jackson stated that he started

4.

with the driver's door handle but did not recover any useable fingerprints. After finishing the exterior he proceeded to look for prints inside. Detective Jackson stated that the interior consisted mainly of textured surfaces, including cloth seats and textured plastic which were not good surfaces to lift fingerprints. Both the exterior and interior were dust covered which Jackson indicated was also not good for finding usable prints. Ultimately, no useable fingerprints were recovered.

{¶ 10} Toledo Police Detective Brandon Harrison went to the victims' home and spoke with them and the patrol officers. Detective Harrison testified that he lifted some fingerprints from the door leading from the interior of the garage to the interior of the house; he was later told that they were unusable. Detective Harrison also photographed the scene.

{¶ 11} Detective Harrison testified that he interviewed appellant at police headquarters; the recorded interview was played for the jury. Harrison was questioned about appellant's statement that he found the wallet on the ground and that it had money in it. Detective Harrison agreed that when wallets or purses are recovered following a burglary they generally do not have money in them. Further, appellant suggested that he may have picked up the keys with the wallet; but Harrison agreed that the statement belied the fact that the wallet, keys, and money were all found in different pockets of his cargo pants. Detective Harrison acknowledged that appellant never deviated from his story.

5.

{¶ 12} Following the conclusion of the state's case, appellant made a Crim.R. 29 motion for acquittal as to both charges which was denied. Appellant rested, he renewed the motion which was again denied. Closing arguments and jury instructions were given. Following deliberations, the jury found appellant guilty of burglary and grand theft of a motor vehicle. Appellant was immediately sentenced to seven years of imprisonment for burglary, and 12 months of imprisonment as to grand theft of a motor vehicle; the sentences were ordered to be served concurrently. Appellant was also ordered to pay the costs of supervision, confinement, assigned counsel, and prosecution.

{¶ 13} This appeal followed with appellant raising three assignments of error for our review:

I. The trial court erred in denying appellant's Crim.R. 29 motion.

II. The jury's verdict was against the manifest weight of the evidence presented at trial.

III. The trial court committed error to the prejudice of appellant by imposing the costs of prosecution without consideration of appellant's present or future ability to pay.

{¶ 14} In appellant's first assignment of error he argues that the trial court erred by denying his Crim.R. 29 motion for acquittal on the charges. Specifically, appellant contends that no forensic evidence was presented at trial linking him to the burglary. Further, when stopped by police, his demeanor was calm and he was cooperative.

6.

**{¶ 15}** Crim.R. 29(A) provides for an entry of a judgment of acquittal if the evidence is insufficient to sustain a conviction. "An appellate court reviews a denial of a Crim.R. 29 motion for acquittal using the same standard that is used to review a sufficiency of the evidence claim." *State v. Reyes*, 6th Dist. No. WD-03-059, 2005-Ohio-2100, ¶ 21, citing *State v. Carter*, 72 Ohio St.3d 545, 553, 651 N.E.2d 965 (1995). "'The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *Id.* at ¶ 22, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶ 16}** Appellant was convicted of burglary, which required the state to prove that by "force, stealth, or deception" appellant trespassed in an occupied structure with the purpose to commit any criminal offense. R.C. 2911.12(A)(1). Appellant was also convicted of grand theft of a motor vehicle, a violation of which requires proof that appellant, "with purpose to deprive the owner of property or services" knowingly took the motor vehicle without the consent of the owner or person authorized to give consent. R.C. 2913.02(A)(1) and (B)(5).

**{¶ 17}** Further, this court has noted that

a jury may reasonably infer that a defendant committed theft or burglary based on the following circumstantial evidence: (1) the stolen items were found in the defendant's possession "soon thereafter" and (2) there are "other circumstances indicative of guilt"—for example, the

lack of a credible explanation of how the defendant came to possess the stolen items so soon after the crime occurred. *State v. Smith*, 6th Dist. Lucas Nos. L-16-1113, L-16-1114, L-16-1115, 2017-Ohio-5762, ¶ 45, citing *Methard v. State*, 19 Ohio St. 363, 368 (1869). *See also State v. Goodwin*, 6th Dist. Lucas No. L-12-1341, 2014-Ohio-2323, ¶ 37.

{¶ 18} As set forth in the recitation of the facts, at trial evidence was presented that someone made an unauthorized, forced entry into the victims' residence between the hours of 1:00 a.m. and 4:30 a.m., while they were sleeping upstairs, and took a wallet, keys, a purse, and a cell phone all from the kitchen. Following a 9-1-1 call reporting that an individual was looking into houses, appellant, matching the description that was given, was stopped by police and had the victim's wallet and keys and admitted to taking money out of the wallet. He also could not provide a plausible story for why he had the victim's keys. The vehicle was found parked within walking distance of the victims' home and where appellant was apprehended.

{¶ 19} Based on the foregoing, and looking at the evidence in a light most favorable to the prosecution, we find that the jury could have reasonably inferred that appellant burgled the victims' home and stole the motor vehicle at issue. Appellant's first assignment of error is not well-taken.

{¶ 20} In his second assignment of error, appellant again contends that the evidence presented at trial did not support his conviction. In reviewing a claim that a verdict is against the manifest weight of the evidence, the appellate court sits as the

8.

"thirteenth juror" and "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720-721 (1st Dist.1983).

{¶ 21} Thoroughly reviewing the evidence presented at trial, we must conclude that the jury did not lose its way or create an injustice when it convicted appellant of burglary and grand theft of a motor vehicle. The jury was able to assess the credibility of the witnesses and could reasonably infer that because appellant possessed the recently stolen items he was the individual who broke into the home and took them. Appellant's second assignment of error is not well-taken.

{¶ 22} In his third and final assignment of error, appellant argues that the trial court failed to properly determine his present or future ability to pay the various costs imposed at sentencing. The state counters that proper consideration was given prior to the order.

{¶ 23} At the September 28, 2016 sentencing hearing, the trial court stated: "You're ordered to pay all costs of prosecution, restitution in the amount of $115 to [the victim] , along with court-appointed counsel fees and any other fees under 2929.18(A)(4) as I find you are able-bodied, will have the ability to pay these amounts."

9.

**{¶ 24}** The court's September 29, 2016 judgment entry similarly provided:

Defendant found to have, or reasonably may be expected to have, the means to pay all or part of the applicable costs of supervision, confinement, assigned counsel, and prosecution as authorized by law. Defendant ordered to reimburse the State of Ohio and Lucas County for such costs and to pay restitution in the amount of $115.00 to victim. This order of reimbursement and restitution is a judgment enforceable pursuant to law by the parties in whose favor it is entered. Defendant further ordered to pay the cost assessed pursuant to R.C. 9.92(C), 2929.18 and 2951.021. Notification pursuant to R.C. 2947.23 given.

**{¶ 25}** We first note that under R.C. 2947.23, the trial court was required to assess the costs of prosecution against appellant. Such costs are assessed regardless of a defendant's ability to pay. *See State v. Woods*, 6th Dist. Lucas No. L-15-1024, 2016-Ohio-545, ¶ 10, citing *State v. Maloy*, 6th Dist. Lucas No. L-10-1350, 2011-Ohio-6919, ¶ 12.

**{¶ 26}** Regarding costs of assigned counsel and confinement, the court is not required to conduct a hearing on a defendant's ability to pay; rather, the record must contain some evidence that the court considered the defendant's financial ability to pay. *State v. Baughman*, 6th Dist. Lucas No. L-11-1045, 2012-Ohio-5327, ¶ 43, citing *Maloy* at ¶ 13. For example, this court has held that the court properly found that a defendant had the ability to pay assigned counsel and confinement costs where the record

10.

demonstrated that defendant was 25 years old at sentencing, had his GED, was single with one dependent, and had a limited work history. *See State v. Ortiz*, 6th Dist. Lucas No. L-14-1251, 2016-Ohio-974, ¶ 43.

{¶ 27} In the present matter, in addition to the above statements, the trial court indicated that in sentencing appellant, it considered the record including the "Public Safety Assessment, and presentence report [prepared in a prior felony case]." The record reveals that although appellant had no work history, he was 28 years old on the date of sentencing and had his GED. Based on the foregoing, we cannot say that the court's imposition of such costs was contrary to law. Appellant's third assignment of error is not well-taken.

{¶ 28} On consideration whereof, we find that appellant was not prejudiced or prevented from having a fair proceeding, and the judgment of the Lucas County Court of Common Pleas is affirmed. Pursuant to App.R. 24, appellant is ordered to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                  _____

                                                JUDGE

James D. Jensen, J.

                                          _____

Christine E. Mayle, P.J.                        JUDGE
CONCUR.

                                          _____

                                                JUDGE

12.