[Cite as *State v. Magri*, 2018-Ohio-4275.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | CASE NO. 2018-G-0154 |
| SAMUEL MAGRI, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Geauga County Court of Common Pleas, Case No. 2017 C 000034.

Judgment: Affirmed.

*James R. Flaiz*, Geauga County Prosecutor, and *Nicholas A. Burling*, Assistant Prosecuting Attorney, Courthouse Annex, 231 Main Street, Suite 3A, Chardon, OH 44024 (For Plaintiff-Appellee).

*Robert N. Farinacci*, 65 North Lake Street, Madison, OH 44057 (For Defendant-Appellant).

DIANE V. GRENDELL, J.

{¶1} Defendant-appellant, Samuel Magri, appeals from his convictions for Theft and Receiving Stolen Property in the Geauga County Court of Common Pleas. The issues to be determined by this court are whether a court abuses its discretion in admitting business records when the foundation for the documents is provided through the testimony of a former manager who no longer directly maintains such records and whether a conviction for Theft is supported by the weight and sufficiency of the evidence

when items discovered missing from a business were pawned by the defendant, a former employee, approximately a month after their disappearance. For the following reasons, we affirm the judgment of the court below.

{¶2} On February 23, 2017, the Geauga County Grand Jury issued an Indictment, charging Magri with Theft, a felony of the fifth degree, in violation of R.C. 2913.02(A)(1), and Receiving Stolen Property, a felony of the fifth degree, in violation of R.C. 2913.51(A).

{¶3} A jury trial was held on November 7, 2017. The following pertinent testimony and evidence were presented:

{¶4} Max Coulter is a machinist and former plant manager at Troy Innovative Instruments, which manufactures medical instruments and other items. He testified that he was plant manager for 14 years but no longer held that position since new management eliminated it approximately four years ago. In his roles with the company, he became familiar with the machinery and equipment used for manufacturing and had "set up" much of the equipment. He testified that all equipment used for the manufacturing process belonged to Troy and not individual employees. As plant manager, Coulter had been responsible for record-keeping, which included machine maintenance records, purchase records, and calibration records.

{¶5} He testified that Magri had been an application engineer at Troy for approximately two years and was terminated in the summer of 2016. Magri's role involved "help[ing] out on the floor" and "get[ting] the machines going." In that role, Magri worked with the manufacturing equipment daily. To Coulter's knowledge, Magri was friends with at least one employee at Troy following his termination.

{¶6} Coulter testified that around October 2016, Troy employees started to notice equipment was missing around the shop. Coulter testified that he did not give permission for anyone to take items from Troy's premises and was not "aware of" permission being given to Magri to take any items.

{¶7} The first item missing was a Suburban Tool Master Grind used in grinding processes, which Coulter believed went missing in October 2016. Exhibits were presented in relation to this item, including an invoice/purchase order, identifying the price and item number, as well as a copy of a warranty registration card which contained the serial number. Both documents were from 2011.

{¶8} Coulter also testified regarding the other missing items, two micrometers and a digital indicator, which are used to inspect/measure parts manufactured by Troy. He identified three documents providing calibration records (a process completed to ensure they were working accurately) of these items, which listed at the top the items' name/style, the "company asset numbers," and serial numbers. When the missing items were reported to police, Coulter was shown an eBay listing for the grinder at Gold Star Pawn in Eastlake, obtained the warranty card from Troy's maintenance records, and found that the serial numbers matched. All of the missing items were recovered from the pawn shop and returned to Troy.

{¶9} On cross-examination, Coulter testified that he was not currently responsible for inventory or calibration records, although he could access them when needed. He could not identify exactly when the items, other than the grinder, went missing.

{¶10} Detective Donald Seamon of the Geauga County Sherriff's Office went to

Gold Star Pawn in November 2016 after an investigation had determined Troy's missing items may be located there. He obtained copies of the pawn slips and receipts for a grinder, two micrometers, and a digital indicator, which showed they were pawned by Magri. The pawn slips also listed the serial numbers of each of the items. He testified that the serial number from Troy's warranty card for the grinder matched the number on the recovered grinder. An interview between Detective Seamon and Magri was played. Pursuant to the interview, Magri stated that the items he had pawned at Gold Star were ten to twelve years old and some had been obtained from a "place that went out of business" called Axiom in Mentor. When informed by police that the items had gone missing from Troy recently, Magri stated that he had been to Troy a "couple times" to visit a friend who works there but did not go inside of the building since he was terminated. He stated that the only possibility would be for the micrometer to get "mixed up" with his tools while he was still working at Troy. He denied stealing the items.

{¶11} At the close of the State's case, Magri's counsel objected to the admission of exhibits from Troy's records since they were not verified by a records custodian or other qualified person. Defense counsel also made a Rule 29 motion to dismiss. These requests were denied.

{¶12} On November 8, 2017, the jury found Magri guilty of both counts as charged in the Indictment. The verdict was memorialized in a November 20, 2017 Judgment Entry.

{¶13} At the sentencing hearing, the court denied Magri's request to merge the two offenses and ordered him to serve a term of 90 days of residential community control in the Geauga Safety Center and three years of community control. The trial

4

court filed its Judgment Entry of Conviction memorializing the sentence on January 25, 2018.

**{¶14}** Magri moved to stay his sentence, which motion was denied by the trial court. He moved this court for a stay, which was granted in a February 8, 2018 Judgment Entry.

**{¶15}** On appeal, Magri raises the following assignments of error:

**{¶16}** "[1.] The court erred to the prejudice of the defendant by admitting documentary hearsay evidence that was not testified to by the custodian of records or other qualified witness.

**{¶17}** "[2.] The court erred to the prejudice of appellant when it overruled his Crim.R. 29(A) motions where there lacked sufficient evidence for the theft count to proceed to jury and in the alternative, the evidence that was before the jury lacked sufficient weight to support a conviction of theft."

**{¶18}** In his first assignment of error, Magri argues that the trial court erred by admitting exhibits presented during Coulter's testimony, which included an invoice and warranty registration card for purchase of the grinder, and three calibration records for the micrometers and the digital indicator. He contends that these were not presented by a proper records custodian and constituted hearsay not admissible under any exception.

**{¶19}** "[A] trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991). However, "while the trial court has discretion to

admit or exclude relevant evidence, it has no discretion to admit hearsay." *John Soliday Fin. Group, L.L.C. v. Pittenger*, 190 Ohio App.3d 145, 2010-Ohio-4861, 940 N.E.2d 1035, ¶ 28 (5th Dist.). *See also State v. Fambro*, 11th Dist. Trumbull No. 2016-T-0063, 2017-Ohio-5646, ¶ 44.

{¶20} Hearsay is an oral or written statement, "other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). "It is axiomatic that hearsay evidence is inadmissible unless it falls within the specific hearsay exceptions enumerated in the Rules of Evidence." *State v. DeMarco*, 31 Ohio St.3d 191, 195, 509 N.E.2d 1256 (1987).

{¶21} In the present matter, the parties' argument centers around whether the evidence was admissible hearsay under Evid.R. 803(6), which allows the admission of:

> [a] memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. * * *

{¶22} "To qualify for admission under Rule 803(6), a business record must manifest four essential elements: (i) the record must be one regularly recorded in a regularly conducted activity; (ii) it must have been entered by a person with knowledge of the act, event or condition; (iii) it must have been recorded at or near the time of the transaction; and (iv) a foundation must be laid by the 'custodian' of the record or by some 'other qualified witness.'" (Citation omitted.) *State v. Davis*, 116 Ohio St.3d 404,

6

2008-Ohio-2, 880 N.E.2d 31, ¶ 171. A qualified witness is someone with "'enough familiarity with the record-keeping system of the business in question to explain how the record came into existence in the ordinary course of business.'" *State v. Phillips*, 11th Dist. Lake No. 2016-L-029, 2017-Ohio-1204, ¶ 26, citing *State v. Hood*, 135 Ohio St.3d 137, 147, 2012-Ohio-6208, ¶ 40.

{¶23} Magri argues that Matt Coulter testified that he no longer is the keeper of records for Troy, is employed only as a machinist, and thus, is not qualified to testify as to the business records in question. It must be noted however, that Coulter had been the plant manager for fourteen years. Pursuant to his testimony, when he was plant manager, he tended to "day to day business" including the upkeep of equipment, maintenance records, purchase records, and calibration records. As to the purchase order and warranty card for the grinder, Coulter was plant manager at the time these documents were created in 2011 and testified that he had maintained these documents. The warranty document has a notation on the bottom that a copy was given to Coulter for his files. As to these records, he was well-qualified to testify as he was directly involved in ensuring the grinder was warrantied and keeping up to date records of purchases. While he may no longer physically maintain such records, he was permitted to access them from the Troy files and it is hard to imagine a more well-qualified person to testify about the grinder paperwork than the man who was directly involved in its registration and maintenance.

{¶24} As to the documents relating to the other equipment, these records were created by OCS Technologies in 2016, and documented the results of calibration services performed on the micrometers and indicator. Coulter testified that he is not

7

currently involved in the calibration process, nor does he maintain the records for calibration. However, it is worth noting again, he was a person who had extensive knowledge of record-keeping and the calibration process from his experience as plant manager, which would appear to satisfy the requirements that a qualified witness have "familiarity with the record keeping system of the business." *Phillips* at ¶ 26.

{¶25} Magri also argues that a witness should have been called from OCS, since it prepared the calibration documents. As stated in Evid.R. 801(C), hearsay includes only that which is "offered in evidence to prove the truth of the matter asserted." As to the calibration itself, there is no question that the prosecution did not present the records from OCS to show the truth of the calibration, which was irrelevant to the trial. As to the serial numbers, while these would constitute hearsay as they were admitted to prove ownership of the items by Troy, Evid.R. 803(6)'s applicability as an exception to the hearsay rules allows the admission of such a record.

{¶26} Even if admission of the calibration records was made in error, such error would be harmless. *See* Crim.R. 52(A) ("[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded"). There is no reasonable question as to whether Coulter was a qualified person to testify about, at the very least, the grinder, for the reasons discussed above. The grinder was purchased for approximately $2,500 and listed for sale by Gold Star Pawn for over $1,300. Even if evidence of other items was not admissible to prove the serial numbers of the micrometers and the digital indicator, the evidence establishing the grinder theft alone would have justified the fifth-degree felony Theft conviction, since this offense requires that "the value of the property * * * stolen is one thousand dollars or more." R.C.

2913.02(B)(2).

{¶27} The first assignment of error is without merit.

{¶28} In his second assignment of error, Magri argues that his conviction for Theft was not supported by sufficient evidence, nor the weight of the evidence.

{¶29} Crim.R. 29(A) provides, in pertinent part: "[t]he court * * * shall order the entry of a judgment of acquittal of one or more offenses charged * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." In reviewing the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶30} Whereas "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, * * * weight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997). "[A] reviewing court asks whose evidence is more persuasive—the state's or the defendant's?" *Id.* An appellate court must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Citation omitted.) *Thompkins* at 387. "Since there must be sufficient evidence to take a case to the jury, it follows that 'a finding that a

9

conviction is supported by the *weight* of the evidence necessarily must include a finding of sufficiency.'" (Citation omitted.) *State v. Arcaro*, 11th Dist. Ashtabula No. 2012-A-0028, 2013-Ohio-1842, ¶ 32.

{¶31} To convict Magri of Theft, the State was required to prove, beyond a reasonable doubt, that he did, "with purpose to deprive the owner of property or services * * * knowingly obtain or exert control over either the property or services in any of the following ways: (1) Without the consent of the owner or person authorized to give consent." R.C. 2913.02(A)(1).

{¶32} Here, evidence was presented to support a conclusion that Magri had possession of property that had been stolen from Troy, in that property alleged by a Troy employee to have been stolen was pawned using Magri's name and identification. Magri admitted to having pawned the items in question. The testimony and exhibits demonstrated matching descriptions, including serial numbers, of the items missing from Troy and those recovered from the pawn shop. Coulter testified that Magri did not have permission to possess these items. In Magri's interview, he admitted he had returned to Troy to visit friends after his termination.

{¶33} It is a reasonable inference that Magri intended to deprive the owner of the property, given that he pawned it. While there was no specific evidence presented to show exactly how the property was acquired, it was also reasonable to infer that Magri took the property from Troy or, at the least, was involved with other parties in taking the items and would have realized this property belonged to Troy, having worked with the equipment while employed there.

{¶34} Magri's main contention is that there "is no evidence that [he] is the person

who stole the items subject of the Indictment." The State counters that even if he did not steal the items himself, having a friend steal the items and provide them to him constitutes Theft.

**{¶35}** It has been held that, "a jury may reasonably infer that a defendant committed theft or burglary based on the following circumstantial evidence: (1) the stolen items were found in the defendant's possession 'soon thereafter,'" i.e., with "close temporal proximity" between the commission of the crime and defendant's possession of the items and "(2) there are 'other circumstances indicative of guilt'—for example, the lack of a credible explanation of how the defendant came to possess the stolen items so soon after the crime occurred." *State v. Smith*, 6th Dist. Lucas Nos. L-16-1113, et al., 2017-Ohio-5762, ¶ 45, citing *Methard v. State*, 19 Ohio St. 363, 368 (1869); *see also State v. McAllister*, 53 Ohio App.2d 176, 180, 372 N.E.2d 1341 (8th Dist.1977) ("unexplained possession by a defendant of recently stolen property may give rise to a permissible inference from which a jury may conclude, beyond a reasonable doubt, that the accused is guilty of the theft"). This principle has been applied to cases for Theft under R.C. 2913.02(A)(1), the same charge present in this matter. *In re R.T.*, 8th Dist. Cuyahoga No. 101093, 2014-Ohio-5686, ¶ 13-17; *State v. Boone*, 6th Dist. Lucas No. L-16-1246, 2018-Ohio-772, ¶ 16-19.

**{¶36}** Here, the items were found in a pawn shop approximately a month after the timeframe during which they went missing, as described by Coulter (although he was uncertain as to the exact time they disappeared). While Magri explained in his interview with police that he had either previously owned the property or accidentally mixed up Troy property with his own tools while employed there, we find that the jury

11

was entitled to determine this was not a reasonable explanation. Coulter testified that no permission was given to take the items and that while some employees had some personal equipment used on the job, these were the type of items that remained within the shop to complete the manufacturing process. At least one item, the grinder, was a larger tool that would not be removed from Troy property "accidentally." Further, the items went missing after Magri's employment terminated. Any contention that they were Magri's personal items from a prior job is entirely inconsistent with the records and testimony demonstrating that they belonged to Troy. *See State v. Cody*, 6th Dist. Huron No. H-88-33, 1989 WL 65113, *1, 3 (June 16, 1989) (finding, in the context of a receiving stolen property conviction, that a stolen item, including unique qualities, identified by the owner, found three months after the item was stolen, and which was inexplicably in the defendant's possession, met the requirements for a "permissive inference that the defendant is guilty of a theft offense").

{¶37} While this case is based on circumstantial evidence, a fact with which Magri takes issue, the well-established law of Ohio is that a defendant may be convicted solely on the basis of circumstantial evidence. *State v. Nicely*, 39 Ohio St.3d 147, 151, 529 N.E.2d 1236 (1988). "Circumstantial evidence is not less probative than direct evidence, and, in some instances, is even more reliable." (Citation omitted.) *Id.*

{¶38} Based on the foregoing, we reject Magri's argument that the Theft conviction was against the weight of the evidence, and, therefore, that there was insufficient evidence for such conviction. While much of his argument relies on the belief that the evidence was essentially too circumstantial to allow a conviction, this was primarily based on the belief that his possession of the items could not prove Theft.

12

However, possession was a primary factor in demonstrating his guilt, especially when tied to the circumstances that he had recently been terminated from his employment and had no reason to be in possession of the items.

{¶39} The second assignment of error is without merit.

{¶40} For the foregoing reasons, Magri's convictions in the Geauga County Court of Common Pleas are affirmed. Costs to be taxed against appellant.


TIMOTHY P. CANNON, J., concurs,

COLLEEN MARY O'TOOLE, J., dissents.